INDEPENDENCE HMO, INC., d/b/a
Partners Health Plan

v.

Cynthia SMITH.

Civ. A. No. 90–0338.

United States District Court,
E.D. Pennsylvania, C.D.

April 2, 1990.

---

Steven R. Fischer, Philadelphia, Pa., for plaintiff.

Howard K. Trubman, Philadelphia, Pa., for defendant.

## OPINION AND ORDER

VAN ANTWERPEN, District Judge.

This non-jury matter comes before the court upon the plaintiff's motion for a preliminary injunction. The plaintiff, a health maintenance organization, seeks to enjoin the plaintiff's tort action against it in the Court of Common Pleas of Montgomery County until the plaintiff has exhausted the "Grievance Procedure" set forth in the contract between the plaintiff and the defendant's employer. The parties have stipulated that the court's ruling shall be a final judgment on the merits. Jurisdiction is based upon 28 U.S.C. §§ 1331, 2201, 2202 and 29 U.S.C. § 1132(k). A hearing was held in this matter in Easton, Pennsylvania, on February 2, 1990. After considering the testimony and other evidence received, we make the following findings of fact and state conclusions of law, pursuant to Fed. R.Civ.P. 52(a).

## FINDINGS OF FACT

1. The plaintiff and the defendant have stipulated to the following facts:

A. That, at all relevant times and for purposes of the defendant Cynthia Smith's claims against the plaintiff, Independence HMO, Inc. d/b/a PARTNERS Health Plan ("Plaintiff HMO"), she was an "employee" of the Tremont Hotel (now known as the Tremont Inn) within the meaning of 29 U.S.C.A. § 1002(6) (West Supp.1989).

B. The plan of health and welfare benefits provided by the Tremont to its employees through the Plaintiff HMO was evidenced by a contract between the Plaintiff HMO and the Tremont.

C. The terms of the contract include provision 7.6, entitled "Grievance Procedure" (as set forth in Exhibit A to the complaint in this matter).

D. The defendant, with respect to the events and circumstances upon which she predicates her state court claim against the Plaintiff HMO, did not pursue any of the procedures set out in provision 7.6 "Grievance Procedure".

E. The defendant did not communicate in writing, or otherwise, to the Plaintiff HMO any statement of complaint, discontent or dissatisfaction with Dr. Spellman's surgery upon her which is the subject of her state court action before she filed that action.

2. At the hearing held on February 2, 1990, Mary Adams, the Plaintiff HMO's marketing representative, testified that the Plaintiff HMO is a "for profit" plan which enrolls three to four thousand new plan members each year. She said that when a new member enrolls, an identification card is generated and a "PARTNERS Health Plan Kit" (Plaintiff's Exhibit 3) is also mailed to the new member.

3. Ms. Adams stated that the PARTNERS Health Plan Kit contains many items, including a pamphlet entitled "Evidence of Coverage". In this pamphlet is a section captioned "Grievance Procedure". She also stated that, although the identification card should go out with the "Evidence of Coverage", she cannot be certain that this always happens in every case.

4. Marlene Bell has worked as a quality assurance nurse for the Plaintiff HMO since May, 1989. She said her job is to ensure quality care for the Plaintiff HMO's members. She identified a complaint form (Plaintiff's Exhibit 4) which was in use in 1989. Such a form is used to log any complaints which are made by HMO plan members. Complaint categories include "Quality of Care" and refers to "Dissatisfaction with Physician" and "Inaccurate Diagnosis", among the list of possibilities. Ms. Bell stated that complaints in the "Quality of Care" category have been received and resolved by the Plaintiff HMO.

5. Ms. Bell stated that HMO plan members' complaints are processed under the Plaintiff HMO's Grievance Procedure process. An HMO plan member's complaint, if unresolved through the Plaintiff HMO's Bala Cynwyd office, is sent to the Plaintiff HMO's Quality Assurance Committee which will then resolve it. Ms. Bell did not know what would happen if there were no resolution by this Committee, since she had never encountered such a situation.

6. Ms. Bell said that HMO plan members, in their complaints, have never used the word "negligence", but the Plaintiff HMO has handled complaints regarding dissatisfaction with the treatment received. She said that she had never handled a complaint where someone had started a lawsuit against the primary care doctor. The types of complaints with which Ms. Bell is familiar include: no response from the doctor, too long a wait to see a doctor, and a member's desire for a chest x-ray with a physical. She said that, during her tenure, she had not encountered a complaint from an HMO plan member about a member's desire for additional tests. If such a complaint arose, she said, it would go to the Quality Assurance Committee. She also testified that she does not recall any authorization by the Plaintiff HMO's Quality Assurance Committee for the payment of hundreds of thousands of dollars to compensate for a physician's error.

7. John Adessa, the Plaintiff HMO's Chief Executive Officer, described how a health maintenance organization works. An HMO makes a contract with an employer to provide health care benefits through a plan offered to employees. The Grievance Procedure was part of the contract which was made with the Tremont, the defendant's employer. He identified Plaintiff's Exhibit 5, a newsletter of January/February, 1989, which contained an article about the Grievance Procedure. He said that these newsletters are mailed to all members of Plaintiff HMO's plan from Dallas, Texas.

8. Mr. Adessa said that he felt that the Grievance Procedure was important to the Plan to reduce costs for outside services. Such a procedure allows the HMO plan member to complain to the Plaintiff HMO and enables the Plaintiff HMO to provide an easy solution to medical problems. Mr. Adessa said that, since there is not much money in the Plan's budget for legal fees, bypassing the Grievance Procedure would have an impact on the Plaintiff HMO's budget.

9. Mr. Adessa said that he thought that there was nothing in the Grievance Procedure to preclude the Plaintiff HMO from paying monetary compensation to a claimant. This situation, however, has yet to come up, he said.

10. Mr. Adessa explained his understanding of the Grievance Procedure, with its initial and secondary levels of review, its characterization of the Quality Assurance Committee's decision as "binding", its right to appeal to state agencies, and its right to bring an action in a court of law. Mr. Adessa said that the grievances he has handled have never gone beyond the levels of review. He also discussed his understanding of paragraphs 8.1 and 8.2 of the contract between the Plaintiff HMO and the Tremont, the defendant's employer.

11. Defendant Cynthia Smith testified that she did not recall receiving the PARTNERS Health Plan Kit. She did receive her identification card, but only after complaining to her employer and to the Plaintiff HMO. She then received the identification card in the mail. She testified that she has been a member of the Plaintiff HMO plan since December, 1987 or January, 1988.

12. Section 7.0 of the agreement between Plaintiff HMO and defendant Cynthia Smith's employer, "Subscribers' Rights and Responsibilities", contains Paragraph 7.6 which is entitled "Grievance Procedure". Paragraph 7.6 reads as follows:

(a) *Informal Resolution of Complaints:* HMO encourages Subscribers to direct any questions or concerns to Participating Providers or HMO's staff members. All complaints should be resolved informally whenever possible. Subscribers should first attempt to resolve complaints about medical treatment through their Primary Care Physician. If the complaint cannot be satisfactorily resolved in this manner, or if the complaint is not a medical treatment issue, the Subscriber should telephone HMO's Member Services Department. A Member Services Representative will be available to receive the call and seek informal resolution of the complaint. If the initial complaint is in writing, a Member Services Representative will telephone the Subscriber to seek informal resolution. If the complaint is not resolved satisfactorily on the informal basis, the Member Services Representative will inform the Subscriber that he/she may seek informal resolution of the complaint through HMO's grievance procedure.

(b) If the Subscriber has a grievance or a complaint for any matter arising our [*sic*] of this Contract or services rendered hereunder he/she may submit a written summary of the complaint to HMO containing a statement of the action requested. The written statement must contain the Subscriber name, address, Subscriber [*sic*] Subscriber number, signature and date and should be sent to Partners National Health Plans Grievance Committee, 150 Monument Road, Suite 106, Bala Cynwyd, PA 19004. An oral complaint which cannot be resolved informally must be presented in

writing before it shall be considered a formal grievance. At any stage of the grievance process, at the Subscriber's request, HMO shall appoint a member of its staff who has no direct involvement in the case to represent the Subscriber.

(c) *Initial level of Review:* The initial level of review shall be conducted by a committee consisting of one or more individuals who may be HMO employee [*sic*]. The initial review shall provide an opportunity for the Subscriber and any other party of interest to present written data pertinent to the grievance. The committee shall cause an investigation to be made into the circumstances surrounding the grievance, and shall provide the Subscriber with an initial determination within 30 days from receipt of the grievance. The decision of the initial review committee shall be binding unless the Subscriber appeals the decision. The Subscriber will be notified in writing of his/her right to appeal the decision and trigger a second level of review.

(d) *Second Level of Review:* The Subscriber may appeal a decision of the initial review committee by notifying the Grievance Committee in writing, within 30 days after receipt of the decision. The second level of review shall be conducted by HMO's Grievance Committee which shall be established by HMO's Board of Directors. At least one-third of the members of the Grievance [*sic*] shall be HMO Subscribers. The Grievance Committee will have written procedures for investigating grievances, for conducting formal hearings, and for utilizing informed consultants to resolve grievances and will provide Subscribers with a copy of these procedures upon request. The Grievance Committee shall issue a written decision within 30 days after the notice of appeal is received. If, however, circumstances beyond the control of HMO render it impracticable for a decision to be reached within the 30–day time limitation, then the Subscriber will be advised as to the reasons for the delay and the anticipated date of the decision. The decision of the Grievance Committee shall be binding subject to the Subscrib-

er's right to appeal the decision to the Pennsylvania Secretary of Health or the Commissioner of Insurance. The Subscriber will be notified in writing of his/her right to appeal a decision of HMO's Grievance Committee.

(e) *Claims or Suits:* A Subscriber may not bring an action in court against HMO unless and until such grievance procedures made available by HMO have first been exhausted.

13. Section 8.0 of the agreement between Plaintiff HMO and defendant Cynthia Smith's employer, "Relations Among Parties", consists of two paragraphs, 8.1, "HMO to Contracting Organizations" and 8.2, "Group and Plan Subscriber to HMO and Contracting Organizations." These paragraphs read as follows:

8.1 *HMO to Contracting Organizations:* HMO and the Contracting Organizations are independent contractors. Physicians and employees of Contracting Organizations are not employees or agents of HMO; nor is HMO, or any employee of HMO an employee or agent of Contracting Organization.

*Neither HMO nor any related entity nor any employee, officer or director of HMO or any related entity shall have any liability or be held liable for any actions taken by the aforementioned parties, or for the malpractice of any provider of health care including, but not limited to, any physicians, hospital, nurse or paraprofessional or any of their employees or agents.* (Emphasis in original).

8.2 *Group and Plan Subscriber to HMO and Contracting Organizations:* Neither Group nor any Subscriber is the agent or representative of HMO and neither shall be liable for any acts or decisions of HMO, or its employees or agents, or Contracting Organization or its employees or agents. Participating Physicians maintain a physician-patient relationship with Subscribers and are solely responsible for all Medical Services performed. Hospital maintains the hospital-patient relationship with Subscribers and is solely responsible to Sub-

scribers for all hospital services performed. Skilled Nursing Facility maintains the nursing facility-patient relationship with Subscribers and is solely responsible to Subscribers for all skilled nursing facility services performed.

14. Section 3.0 of the agreement between Plaintiff HMO and defendant Cynthia Smith's employer, "Definitions", defines "Contracting Organization" at paragraph 3.6, which reads: *"Contracting Organization:* Those organizations with which the HMO contracts for the provision of services including, but not limited to, Participating Physicians, Participating Hospitals, and Participating Skilled Nursing Facilities." "Group" is defined at paragraph 3.17 as "Any corporation, partnership, governmental entity, union or other organization which has contracted with HMO for the provision of services under this Group Medical and Hospital Service Agreement."

## DISCUSSION

The Plaintiff HMO in the instant case seeks an injunction against Cynthia Smith's continuing to name it as a defendant in Ms. Smith's medical malpractice action currently pending in the Court of Common Pleas of Montgomery County, Pennsylvania. The action is for malpractice and the Plaintiff HMO is also named as a defendant under agency theories advanced pursuant to the doctrine of *Boyd v. Albert Einstein Medical Center*, 377 Pa.Super. 609, 547 A.2d 1229 (1989). The Plaintiff HMO has framed the issue in this manner: whether Ms. Smith's invocation of state law and judicial authority prior to the exhaustion of the grievance procedures which are a part of her plan of benefits involves the state in an act which directly affects the terms, provisions and administration of an ERISA plan and, thus, is preempted by Section 514(a) of ERISA. The Plaintiff HMO has, in effect, asked us to determine only the issue of preemption.

29 U.S.C. § 1144(a) [Section 514(a) of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq.*] reads as follows:

Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.

The definition of "State law", found at 29 U.S.C. § 1144(c)(1), reads in pertinent part: "The term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State...." It is important to recall that ERISA preempts any such "State laws" not in general but only "insofar as they may now or hereafter *relate to* any employee benefit plan...." 29 U.S.C. § 1144(a). (Emphasis supplied). The United States Supreme Court, in *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987), spoke of the meaning of the phrase "relate to":

In both *Metropolitan Life [Ins. Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985) ], *supra,* and *Shaw v. Delta Air Lines, Inc., supra,* 463 U.S. [85], at 96–100, 103 S.Ct. [2890], at 2899–2901 [77 L.Ed.2d 490 (1983) ], we noted the expansive sweep of the preemption clause. In both cases "[t]he phrase 'relate to' was given its broad common-sense meaning, such that a state law 'relate[s] to' a benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan.'" *Metropolitan Life,* 471 U.S., at 739, 105 S.Ct., at 2389, quoting *Shaw v. Delta Airlines, supra,* 463 U.S., at 97, 103 S.Ct., at 2900....

The question of whether a state tort claim "relates to" an ERISA plan, and is thus preempted by that statute, has recently been considered by another judge of this court in *Greenblatt v. Budd Co.,* 666 F.Supp. 735 (E.D.Pa.1987). In *Greenblatt,* the plaintiff brought an action against his employer and its agents, seeking pension benefits due him under ERISA and relief under Pennsylvania tort law. The tort

which the plaintiff alleged was a misrepresentation that the pension benefits he was receiving under the Trailer Division Pension Plan would be made equal to those available to comparable salaried management personnel under the Corporate Pension Plan. The defendants in *Greenblatt* argued that this state law action for misrepresentation was preempted by 29 U.S.C. § 1144. The defendants in *Greenblatt* also argued that they were entitled to summary judgment on all counts—including the state tort count—because exhaustion of internal plan remedies is a precondition to bringing suit under ERISA and the plaintiff had failed to exhaust his internal plan remedies.

The court in *Greenblatt* did not agree with either of defendants' arguments. With regard to the preemption argument, it said:

> In those cases where federal courts have decided that preemption is not mandated, the rationale often advanced is that the state law in question impacts upon ERISA in an indirect manner that is too tenuous or too remote to warrant preemption. The case at bar presents this type of situation. However, the state law in question in the case before the Court does not impact upon an employee pension benefit plan or affect the Congressional scheme contained in the Employee Retirement Income Security Act at all.

*Id.* at 741–742.

The court in *Greenblatt* also rejected the argument that ERISA required the exhaustion of internal plan remedies as a precondition to bringing suit under ERISA. The court said:

> Count II [misrepresentation] does not lend itself to the exhaustion rationale because the plaintiff seeks a remedy for misrepresentation that does not arise under ERISA. Also, the plaintiff's successful pursuit of his misrepresentation claim does not depend in any way on plaintiff's contractual entitlement to pension benefits.

*Id.* at 743.

 As we have noted in the instant case, the defendant has named the Plaintiff HMO as a defendant in her state court medical malpractice suit under the theory of "ostensible agency" found in *Boyd v. Albert Einstein Medical Center,* 547 A.2d 1229, *supra.* In *Boyd,* the Superior Court permitted the suit to proceed against a defendant HMO under the "ostensible agency" theory articulated in *Restatement (Second) of Torts* § 429 (1965).

The Plaintiff HMO in the instant case is also being sued in state court as a tortfeasor under this type of vicarious liability. Does this sort of state tort action "impact upon" an employee benefit plan or "affect the Congressional scheme contained in the Employee Retirement Income Security Act", in the words of *Greenblatt,* 666 F.Supp. at 742? We think not. The suit which the defendant Smith is bringing has nothing to do with any denial of her rights under the plan. Instead, she seeks redress for physical injuries in which the Plaintiff HMO's selection of an operating surgeon allegedly played a part. We do not believe that the plaintiff HMO's Grievance Procedure is designed to adequately handle state tort claims for money damages against the Plaintiff HMO. More importantly, we fail to see how such a state tort action can affect the scheme carefully devised by Congress in the ERISA statute.

We agree with the court in *Albert Einstein Medical Center v. Action Manufacturing Co.,* 697 F.Supp. 883, 885 (E.D.Pa. 1988) when it said: "[T]he Congressional purpose underlying the breadth of ERISA's preemption provision—to secure uniform federal laws regulating employee benefit plans—is not advanced by preemption of state common law claims which are not premised on a violation of duties imposed by ERISA." (Footnote omitted). Since the defendant's tort action seeks a remedy for personal injuries that does not arise under ERISA and since her pursuit of her tort action does not depend upon her contractual entitlement to health plan benefits, there is no requirement under ERISA that defendant first exhaust her internal plan remedies before bringing suit.

Moreover, we are strengthened in our conclusion that the defendant's tort claim is not preempted by ERISA by the United States Supreme Court's statement in *Mackey v. Lanier Collections Agency & Service*, 486 U.S. 825, 108 S.Ct. 2182, 2187, 100 L.Ed.2d 836 (1988):

> ERISA plans may be sued in a second type of civil action, as well. These cases—lawsuits against ERISA plans for run-of-the mill state-law claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan—are relatively commonplace. Petitioners and the United States (appearing here as *amicus curiae*) concede that these suits, although obviously affecting and involving ERISA plans and their trustees, are not pre-empted by ERISA § 514(a). See Tr. of Oral Arg. 6, 11–12, 15. (Footnote omitted).

We must characterize the defendant's state court tort suit in the case at bar as a "run-of-the mill" state law claim and, therefore, according to *Mackey*, it is not preempted by ERISA.

### CONCLUSIONS OF LAW

1. In order to be entitled to a preliminary injunction, the moving party must show: (1) a reasonable probability of eventual success in the litigation, and (2) irreparable injury *pendente lite* if relief is not granted. The court should also take into account, when these are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest. *In Re Arthur Treacher's Franchise Litigation*, 689 F.2d 1137, 1143 (3d Cir.1982).

2. In this Circuit, a preliminary injunction must be denied, unless the moving party can demonstrate both a likelihood of success on the merits and the probability of irreparable harm if relief is not granted. *Morton v. Beyer*, 822 F.2d 364, 367 (3d Cir.1987).

3. In the instant case, the Plaintiff HMO has failed to prove a likelihood of success on the merits.

4. The defendant's state tort claim is not preempted by ERISA and should be allowed to proceed in state court against the Plaintiff HMO.

5. The Plaintiff HMO's request for a preliminary injunction must be denied.