**Virginia ELSESSER and Courage Verzicco, co-guardians of the Estate and Person of Carolyn Verzicco, an incompetent,**

v.

**HOSPITAL OF THE PHILADELPHIA COLLEGE OF OSTEOPATHIC MEDICINE, PARKVIEW DIVISION, a Pennsylvania Corp., et al.**

Civ. A. No. 92–3045.

United States District Court, E.D. Pennsylvania.

July 13, 1992.

Gary M. Gusoff, Philadelphia, Pa., for plaintiffs.

Gilbert F. Casellas, Kimberly H. Humes, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

Plaintiffs brought this personal injury action against a hospital, several doctors in the emergency room of the hospital, plaintiffs' incompetent's primary care physician, and United States Health Care Systems of Pennsylvania, Inc. ("U.S. Health Care"), a health maintenance organization. This action was originally commenced by plaintiffs in the Court of Common Pleas of Philadelphia County, then removed by defendant U.S. Health Care to this court. It arises out of personal injuries allegedly sustained by plaintiff Carolyn Verzicco ("Verzicco")

as a result of care she received at the Hospital of the Philadelphia College of Osteopathic Medicine, Parkview Division ("Parkview") in connection with U.S. Health Care's selection of primary care physicians. U.S. Health Care has filed a Motion to Dismiss the Complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. U.S. Health Care alleges that plaintiffs' state law claims asserted against it should be dismissed as preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* Plaintiffs have responded by filing a motion to remand the entire action to the state court on the basis that the state claims are not preempted by ERISA. For the reasons which follow, the motion to remand is granted and the motion to dismiss is denied.

## STANDARD

In deciding a motion to dismiss pursuant to Fed.R.Civ.P. Rule 12(b)(6), we must accept as true the facts pleaded in the complaint and any reasonable inferences derived from those facts. *Unger v. National Residents Matching Program,* 928 F.2d 1392, 1400 (3rd Cir.1991). The court is to construe the complaint in the light most favorable to the plaintiff. *Colburn v. Upper Darby Township,* 838 F.2d 663, 665 (3rd Cir.1988). A claim should not be dismissed pursuant to Fed.R.Civ.P. Rule 12(b)(6) for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts to support her claim for relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Labov v. Lalley,* 809 F.2d 220, 221–22 (3d Cir.1987).

## FACTS

The following factual account is set forth in accordance with the above standard:

Verzicco worked for a company that provided its employees with a U.S. Health Care benefits plan. Once an employee chooses to become a member of this plan, the employee selects out of a directory

provided by U.S. Health Care a primary care physician. The primary care physician supervises, coordinates and provides initial care and basic medical services to its members. The primary care physician also refers the member for specialist care and maintains the continuity of patient care. Defendant Dr. Leonard Harman was Verzicco's primary care physician. Verzicco had been under Dr. Harman's care since November of 1977.

On July 30, 1990, Verzicco visited Dr. Harman's office complaining of chest pain, mild shortness of breath, and numbness in her shoulders lasting about twenty minutes. Dr. Harman measured Verzicco's blood pressure, which was 150/88, and took an electrocardiogram which revealed an abnormality in t-waves. Dr. Harman ordered blood tests and the use of a Halter Monitor. After approximately one day, Dr. Harman discontinued use of the Halter Monitor because he was told by U.S. Health Care that it would not pay for the service of the Halter Monitor. Dr. Harman did not read the results of the day Verzicco wore the Halter Monitor.

On August 14, 1990, Verzicco began experiencing chest pains radiating across her shoulders, down her arm and up her neck. She went to the Emergency Room at the defendant Hospital of the Philadelphia College of Osteopathic Medicine, Parkview Division ("Parkview") where she was examined by the attending physicians, defendants Robert McAndrew, M.D. and Dr. Potman. Verzicco's blood pressure was 180/110 and the doctors ordered an electrocardiogram which showed evidence of anterior wall ischemia or infarction. Verzicco was given medication and was directed to return if her condition worsened. She was also instructed to contact Dr. Harman on Thursday, August 16, 1990.

The following day, while driving her car, Verzicco experienced extreme chest pain and passed out. She was rushed to Parkview where prolonged resuscitative efforts were performed. However, Verzicco remained unconscious with cardiac arrest and to this day has not regained consciousness. Verzicco suffered irreversible anoxic ence-

phalopathy, which is expected to last for the rest of her life. Verzicco remains at the Fox Nursing Home and Rehabilitation Center where she has been in a persistent vegetative state.

Plaintiffs assert claims for negligence, misrepresentation, and breach of contract against U.S. Health Care with regard to the treatment rendered to Verzicco by her primary care physician. Specifically, plaintiffs claim:

(1) All of the acts referred to above by all of the individual physicians and professional corporation physician, as well as, defendant, Parkview, are imputed to defendant, U.S. Health Care, particularly since plaintiff, Verzicco, looked to U.S. Health Care for care and U.S. Health Care held out Dr. Leonard Harman, P.C. and Leonard Harman, M.D. as its employee. Verzicco justifiably relied upon the care and skill of Leonard Harman, M.D. based, in part, upon the assurances of defendant, U.S. Health Care, that Dr. Leonard Harman, P.C. and Leonard Harman, M.D., the primary care physician, were competent and qualified;

(2) U.S. Health Care failed to exercise reasonable care in selecting, retaining and evaluating plaintiff's primary care physician and, as a result of its failure to use such reasonable care, the risk of harm to plaintiff, Verzicco, was increased resulting in the injuries and damages as set forth herein, thus, subjecting it to liability pursuant to 323 of the Restatement of Torts 2d;

(3) U.S. Health Care improperly instructed Leonard Harman, M.D. that it would not pay for the Halter Monitor causing him to discontinue its use after approximately one day and causing Dr. Harman to fail and refuse to read the results thereof, particularly when the continued use of the Halter Monitor was important for diagnosis and treatment based upon the complaints of Verzicco, and her history;

(5) Other acts of negligence of defendants, Dr. Leonard Harman, P.C. and Leonard Harman, M.D. pertaining to the medical treatment rendered to Verzicco;

(6) U.S. Health Care intentionally misrepresented that each and every primary care physician, including Leonard Harman,

M.D. and Dr. Leonard Harman, P.C., satisfied criteria for participation as a qualified physician after passing vigorous screening criteria established by U.S. Health Care and the primary care physician with whom Verzicco enrolled under the terms of the contract with U.S. Health Care would perform all necessary medical care and treatment and any diagnostic tests which were necessary, including referring Verzicco to a coronary care unit or hospital, if necessary;

(7) Verzicco relied upon the statements of U.S. Health Care which were intentionally false and misleading, and, as a result of her reliance, she sustained the injuries described herein;

(8) The misrepresentations and fraudulent utterances were intended by U.S. Health Care to cause Verzicco to act by subscribing to U.S. Health Care as an HMO and Verzicco justifiably relied upon the misrepresentations with resultant damages as the proximate result thereof;

(9) The misrepresentations, even if innocent by U.S. Health Care, related to matters material to the choice and continued use of a health care provider by Verzicco since it was in such a character that if the misrepresentations had not been made, Verzicco would not have joined U.S. Health Care, or would not have chosen and continued to use Leonard Harman, M.D. as her primary care physician;

(10) U.S. Health Care through contracts and other documents that are within the possession of U.S. Health Care promised that the primary care physicians, including Leonard Harman, M.D., had to undergo vigorous screening and meet certain criteria to be qualified as a primary care physician for U.S. Health Care, and promised that Leonard Harman, M.D. did undergo this screening, met the criteria and was qualified as a primary care physician and that the patient would be referred by Leonard Harman, M.D. to appropriate specialists or hospitals as required for necessary medical treatment and Verzicco enrolled herself and her family with U.S. Health Care for all of her medical care and executed a contract with U.S. Health Care for

U.S. Health Care to provide said medical care;

(11) U.S. Health Care breached the provisions of the contract which required it to provide Verzicco with a qualified primary care physician to provide reasonably competent medical care, including appropriate referrals;

(12) As a result of the breach, Verzicco suffered the injuries described herein.

## DISCUSSION

In its motion to dismiss, U.S. Health Care contends that the state law claims plaintiffs assert against it are preempted by ERISA because they relate to an employee benefits plan. Section 514(a) of ERISA, 29 U.S.C. § 1144(a), states that ERISA's provisions "shall supersede any and all state laws insofar as they may now or they may now hereafter relate to any employee benefit plan...." The preemptive provision of ERISA was meant to establish pension plan legislation as an exclusively federal concern, reserving for the federal government the sole power to regulate the field of employee benefit plans. *McMahon v. McDowell*, 794 F.2d 100, 106 (3rd Cir.1986).

In *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), the Supreme Court explained the meaning of the phrase "relate to":

A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan. Under this broad common-sense meaning, a state law may relate to a benefit plan, and thereby be preempted even if the law is not specifically designed to affect such plans, or the effect is only indirect. Pre-emption is also not precluded simply because a state law is consistent with ERISA's substantive requirements.

*Id.* 498 U.S. at ——, 111 S.Ct. at 483.

In a case strikingly similar to the case *sub judice*, another judge of this court considered whether a state law claim "relates to" an ERISA plan, and is thus preempted. *Independence HMO, Inc. v. Smith*, 733 F.Supp. 983 (E.D.Pa.1990). In

*Smith,* the plaintiff brought a medical malpractice action against HMO under the "ostensible agency" theory in state court. The HMO sought to enjoin the state court's medical malpractice action asserting that it was preempted by ERISA. The district court ruled that the claim was not preempted because "[t]he suit which the defendant Smith is bringing has nothing to do with any denial of her rights under the plan. Instead, she seeks redress for physical injuries in which the Plaintiff HMO's selection of an operating surgeon allegedly played a part." *Id.* at 987.

The court noted that its ruling in no way hindered the Congressional intent of the broad ERISA preemption provision "[s]ince the defendant's tort action seeks a remedy for personal injuries that does not arise under ERISA, and since her pursuit of her tort action does not depend upon her contractual entitlement to health plan benefits...." *Id.* at 988.

■ Similarly, in the case *sub judice,* in all three of the claims plaintiffs have asserted against U.S. Health Care (negligence, misrepresentation and breach of contract), plaintiffs are seeking to hold U.S. Health Care liable in a vicarious capacity for the actions of the primary care physician. Nowhere in any of the three claims do plaintiffs seek to hold U.S. Health Care liable for the denial of any rights or benefits or failure to provide any services under its HMO plan. Rather plaintiffs seek redress against U.S. Health Care for failing to provide Verzicco with a qualified primary care physician. In short, none of plaintiffs' state law claims against defendant U.S. Health Care relate to the scope of the HMO's coverage.

U.S. Health Care relies heavily on the latest United States Supreme Court decision of *Ingersoll–Rand Co. v. McClendon, supra,* which reaffirmed the breadth of ERISA's preemption clause. In *Ingersoll–Rand,* a former employee brought suit against his former employer alleging that he was discharged from employment because of the company's desire to avoid making contributions to his pension fund. *Id.* 498 U.S. at ——, 111 S.Ct. at 481. The

Supreme Court held that "the claim that the employer wrongfully terminated plaintiff primarily because of the employer's desire to avoid contributing to or paying benefits under the employee's pension fund—'relate[s] to' an ERISA covered plan within the meaning of § 514(a) and is therefore preempted." *Id.* 498 U.S. at ——, 111 S.Ct. at 483. The Court stated that the plaintiff had to plead and the court had to find that an ERISA plan existed and that the employer had a pension-defeating motive for terminating employment. *Id.* According to the Court, the existence of the pension plan was a "critical factor" in establishing liability. *Id.* The Court further explained that the inquiry must be directed to the plan as there is no cause of action if there is no plan. *Id.* 498 U.S. at ——, 111 S.Ct. at 484. *See also Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41 (1987) (state common law causes of action asserting improper processing of a claim for benefits under an employee benefit plan are preempted by ERISA); *Berger v. Edgewater Steel Co.,* 911 F.2d 911, 923 (3d Cir.1990) (employees' state law claims against employer for misrepresentation regarding proposed plan amendments "relate to" an employee benefit plan and are therefore preempted by ERISA); *Shiffler v. Equitable Life Assurance Society of the United States,* 838 F.2d 78, 82 (3d Cir.1988) (beneficiary's common law claims seeking payments of two insurance plans after husband died while at work clearly "relate to" the employee benefit plan).

Unlike *Ingersoll–Rand* where the plaintiff sued his employer for the right to receive benefits under a pension plan, plaintiffs in this case are not seeking rights under a plan. Rather, plaintiffs seek redress against the plan in a vicarious capacity for injuries which were allegedly caused in part by a U.S. Health Care affiliated physician. Indeed, were we to find that plaintiffs' claims against U.S. Health Care were preempted, we would be hard pressed to locate a remedy in ERISA for U.S. Health Care's alleged failure to provide a qualified primary care physician.

In sum, despite U.S. Health Care's protestations to the contrary, the case *sub judice* is nothing more than a common law medical malpractice case which should be heard in the appropriate state court.

### ORDER

The motion of the defendant United States Health Care Systems of Pennsylvania, Inc. to dismiss the complaint is DENIED.

The motion of the plaintiffs to remand is GRANTED.

The Clerk is DIRECTED to remand the entire file in this case to the Court of Common Pleas of Philadelphia County.

The parties are DIRECTED to attempt to agree on a reasonable attorneys fee incurred by plaintiffs' counsel in opposing the removal of this action. If the parties are unable to do so, plaintiffs may petition the court.

IT IS SO ORDERED.