**Serena Mary VISCONTI, Deceased by Ronald VISCONTI, as Admin. of the Estate of Serena Mary Visconti, Deceased, and Linda Visconti and Ronald Visconti, in their own right, Plaintiffs,**

v.

**U.S. HEALTH CARE a/k/a the Health Maintenance Organization of Pennsylvania/NJ, Defendant.**

Civ. A. No. 93–6495.

United States District Court, E.D. Pennsylvania.

June 8, 1994.

As Clarified July 5, 1994.

---

Stephen J. Pokiniewski, Anapol, Schwartz, Weiss & Schwartz, P.C., Philadelphia, PA, for plaintiffs.

Richard M. Simins, Jeremy D. Mishkin, Montgomery, McCracken, Walker & Rhoads, Philadelphia, PA, for defendant.

## *MEMORANDUM*

LOWELL A. REED, Jr., District Judge.

Currently before me are the motions of plaintiffs Linda and Ronald Visconti, individually, and as Administrators of the Estate of Serena Mary Visconti, Deceased (collectively "plaintiffs"), to remand this matter pursuant to 28 U.S.C.A. § 1447(c) (West 1994) [1] (Document No. 4) and defendant U.S. Health Care a/k/a The Health Maintenance Organization of Pennsylvania/NJ ("USHC") to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted (Document No. 3). Upon consideration of the motions and the responses thereto, and for the reasons which follow, plaintiffs' motion to remand shall be denied and defendant's motion to dismiss shall be granted.

## II. *BACKGROUND* [2]

This is a case involving state law claims of medical malpractice. Plaintiffs Ronald and Linda Visconti were "participating members" of USHC, an health maintenance organization ("HMO").[3] *See* plaintiffs' complaint at

---

1. Although plaintiffs bring their motion to remand as administrators of the Estate of Serena Mary Visconti, the complaint reveals that only Ronald Visconti is the administrator of the Estate. Accordingly, I consider plaintiffs' motion to be brought by Ronald Visconti, individually and as Administrator of the Estate of Serena Mary Visconti, Deceased, and by Linda Visconti in her own right.

2. I will construe all facts in the light most favorable to the plaintiffs and accept as true all plaintiffs' well-pleaded factual allegations, as I must do when considering a defendant's motion to dismiss. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

3. HMO's are extensively regulated both by federal and state statutes. *See* 42 U.S.C.A. § 300e *et seq.* (West 1991); Pa.Stat.Ann. tit. 40, §§ 1553, 1554, 1560 (West 1992); 28 Pa.Code § 9.75(c)

¶ 8. Plaintiffs do not dispute defendant's statements that their membership in USHC was a benefit provided through Ronald Visconti's employment and that this benefit was part of an employee group health plan that is subject to the Employee Retirement Income Security Act of 1974, 29 U.S.C.A. §§ 1001, *et seq.* (West 1993 & West supp.1994) ("ERISA").

Since this is a motion to dismiss, I must accept as true facts alleged in the complaint and all reasonable inferences that can be drawn therefrom. I recognize hereto, however, that the health care delivery system, and HMO's in particular, are closely regulated by federal and state statutes and codes. I do accordingly conclude that to accurately and forthrightfully analyze the claim and motions before me, I must refer to and accept as background legal facts the relevant applicable statutory and regulatory pronouncements even though those matters were not pleaded in the complaint. Also, where the defendant, with apparent reliability, makes factual statements in its papers regarding basic organizational facts which are not challenged or refuted by plaintiffs, I will utilize those facts as well. If the foregoing invokes Federal Rule of Civil Procedure 56, which I do not conclude it does, then the motion to dismiss must be considered as a motion for summary judgment.

The circumstances underlying plaintiffs' complaint involve allegedly negligent treatment of plaintiff Linda Visconti by Peter M. Wisniewski, M.D. Plaintiffs claim that Dr. Wisniewski failed to take action during Ms. Visconti's prenatal visits despite his awareness of the details of her condition. According to plaintiffs, Ms. Visconti's condition was permitted to deteriorate to such a degree that by late August, 1991, Ms. Visconti's vital signs, weight, laboratory test results and other findings were, when taken together, outside normal limits. Moreover, a fetal heart beat could not be detected. Upon discover-

ing this information, Dr. Wisniewski advised Ms. Visconti to go to Pennsylvania Hospital.

When Ms. Visconti was admitted to Pennsylvania Hospital she displayed several complications. The following day Linda Visconti delivered the plaintiffs' decedent, Serena Mary Visconti, a stillborn, fully developed baby girl with no gross congenital abnormalities at 37 weeks gestation weighing at or around 5 pounds and 9 ounces.

Plaintiffs commenced this suit by filing a complaint against USHC in the Court of Common Pleas of Philadelphia County, Pennsylvania. Plaintiffs alleged that, *inter alia*, U.S. Health Care, either individually or acting through its agents, servants and employees, was negligent and careless in the care and treatment of plaintiffs' decedent Serena Mary Visconti and plaintiff Linda Visconti. Shortly thereafter, defendant filed a notice of removal seeking to remove the case to the United States District Court for the Eastern District of Pennsylvania arguing that this Court has jurisdiction pursuant to 28 U.S.C.A. § 1331 (West 1993) and 28 U.S.C.A. § 1441(b) and (c) (West 1994).

USHC has filed a motion to dismiss the complaint in this Court arguing that plaintiffs' claims are preempted by the terms of ERISA. Plaintiffs have responded by filing a motion to remand this matter, asserting that ERISA does not preempt their claims and that, therefore, no federal issue is involved to confer jurisdiction on this Court.

## III. DISCUSSION

### A. Motion to Remand—Improper Removal

 Plaintiffs have moved to remand this matter to state court arguing that their claims are based strictly on state law and, therefore, that this Court is without jurisdiction to hear their claims.[4] Generally, federal courts must comply with the "well-pleaded

---

(Apr. 1994); 31 Pa.Code § 301.2 (Sept. 1992). Pennsylvania law defines an HMO as "an organized system which combines the delivery and financing of health care and which provides basic health services to voluntarily enrolled subscribers for a fixed prepaid fee." Pa.Stat.Ann. tit. 40, §§ 1553.

4. Plaintiffs did not bring a claim under ERISA. *See* plaintiffs' complaint; plaintiffs' memorandum of law in support of their answer to motion to dismiss and motion to remand pursuant to 28 U.S.C. § 1447(c) ("plaintiffs' opp.") at 7.

complaint" rule regarding removal. The rule states that a defendant cannot remove a case to federal court unless the complaint establishes that the case "arises under" federal law. *Nealy v. U.S. Health Care HMO*, 844 F.Supp. 966, 969–70 (S.D.N.Y.1994); *see Franchise Tax Bd. of California v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 9–10, 103 S.Ct. 2841, 2846, 77 L.Ed.2d 420 (1983). Therefore, a federal defense such as preemption, which does not appear on the face of the complaint, ordinarily will be insufficient to permit removal. *Nealy*, 844 F.Supp. at 969–70.

An exception to this general rule applies where Congress so completely preempts a "particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987) (*"Metropolitan Life"*). In *Metropolitan Life*, the defendants removed the case to federal court alleging that federal question jurisdiction existed because their claim raised a preemption defense pursuant to ERISA. The Supreme Court concluded that Congress has clearly manifested an intent to make claims that fall within the scope of the civil enforcement provisions of ERISA removable to federal court. Accordingly, because the enforcement provisions of ERISA concern similar issues and policies as those addressed by plaintiffs' cause of action, namely, plaintiffs' right to recover damages based in part on a relationship established by the terms of an employee benefit plan, the defense raised by USHC of preemption pursuant to ERISA constitutes an exception to the well-pleaded complaint rule and forms a basis for removal. *Id.* at 66, 107 S.Ct. at 1547; *see Nealy*, 844 F.Supp. at 969–70; *Altieri v. Cigna Dental Health, Inc.*, 753 F.Supp. 61, 63 (D.Conn.1990).

In the instant case, because USHC has raised a preemption defense pursuant to ERISA, and because ERISA claims are " 'necessarily federal in character,' " and plaintiffs' claims fall within the scope of the civil enforcement provisions of ERISA, the removal of this case from state to federal court was properly granted and this Court has jurisdiction over the subject matter in-

volved in this dispute. *Altieri*, 753 F.Supp. at 63 (citations omitted). Consequently, plaintiffs' motion to remand shall be denied.

### B. *Motion to Dismiss—Preemption of State Law*

USHC has filed a motion to dismiss plaintiffs' complaint claiming that plaintiffs' claims are preempted by ERISA. In determining whether or not to grant a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted, I am required to accept " 'as true the facts alleged in the complaint and all reasonable inferences that can be drawn from them.' " *Unger v. Nat'l Residents Matching Program*, 928 F.2d 1392, 1394–95 (3d Cir. 1991) (quoting *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir.1990)). Dismissal is allowed under Rule 12(b)(6) for failure to state a claim in those instances where it is clear that no relief could be granted under any set of facts that could be proved. *Id.* at 1395.

When Congress enacted ERISA, it established a comprehensive system for regulating employee welfare benefit programs. 29 U.S.C.A. §§ 1001–1002 (West 1985 & West supp.1994). The federal statute "provides a detailed system of civil enforcement which limits who may file suit, the grounds for such suits, and the relief to which a litigant is entitled." *Altieri*, 753 F.Supp. at 63. Consistent with this comprehensive scheme, Congress enacted section 514(a) of ERISA, which preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by the statute. 29 U.S.C.A. § 1144(a); *Mackey v. Lanier Collections Agency & Service, Inc.*, 486 U.S. 825, 828, 108 S.Ct. 2182, 2185, 100 L.Ed.2d 836 (1988). This preemption provision has been widely construed and applies to both state statutory and common law claims. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987); *Dukes v. United States Health Care Systems of Pennsylvania, Inc.*, 848 F.Supp. 39, 40 (E.D.Pa.1994); *Ricci v. Gooberman*, 840 F.Supp. 316, 317 (D.N.J.1993). The Supreme Court has stated that "A law 'relates to' an employee benefit plan, in the normal

sense of the phrase, if it has *a connection with* or *reference to* such a plan." *Pilot Life Ins. Co.*, 481 U.S. at 47, 107 S.Ct. at 1553 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983) (emphasis added)). Even indirect state action "bearing on" a health benefit plan may encroach upon an area of exclusive federal concern. *Metropolitan Life v. Commonwealth of Massachusetts*, 471 U.S. 724, 739, 105 S.Ct. 2380, 2388, 85 L.Ed.2d 728 (1985); *Altieri*, 753 F.Supp. at 64 ("any indirect but substantial effect on an employee benefit plan may be sufficient to trigger preemption"). Accordingly, the resolution of defendant's motion depends upon whether plaintiffs' claims of direct and vicarious liability against USHC relate to USHC's employee benefit plan.

Although plaintiffs characterize their claims as sounding *solely* in vicarious liability, it appears that some of plaintiffs' claims are premised upon theories of direct negligence. *See* plaintiffs' opp. at 2, 7. For example, plaintiffs claim that defendant was directly negligent in, *inter alia*, "selecting and employing unqualified personnel in the care and treatment of the plaintiff, Linda Visconti, and plaintiff's decedent," and "not adopting and enforcing adequate rules and policies to insure quality control for its patients." Complaint at ¶ 30(k) and (m). It is well-settled, however, that state law claims against an HMO for the HMO's own negligence are preempted by ERISA. *See Dukes*, 848 F.Supp. at 41; *Nealy*, 844 F.Supp. at 972–73; *Elsesser v. Hospital of the Philadelphia College of Osteopathic Medicine*, 802 F.Supp. 1286, 1290–91 (E.D.Pa. 1992) (plaintiff's claims of direct liability of HMO for failure to provide funding for medical advice is preempted by ERISA); *see also Corcoran v. United Healthcare, Inc.*, 965 F.2d 1321, 1331 (5th Cir.), *cert. denied*, — U.S. ——, 113 S.Ct. 812, 121 L.Ed.2d 684 (1992). *Cf. Berger v. Edgewater Steel Co.*, 911 F.2d 911, 923 (3d Cir.1990) (employees' misrepresentation claims related to the employee benefit plan).

▪ The basis for ERISA preemption in those cases is that a claim for failure to pay a benefit claim, pre-approve a procedure, or create adequate rules to guide the conduct of participating doctors, has an obvious connection to a benefit plan. *Dukes*, 848 F.Supp. at 41. The ERISA plan is the source of the relationship between the plaintiffs and the defendants and, therefore, inevitably requires reference to the plan. *See Corcoran*, 965 F.2d at 1325, 1331; *see also Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 139, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990) ("Here, the existence of a pension plan is a critical factor in establishing liability under the State's wrongful discharge law. As a result, this cause of action relates not merely to pension benefits, but to the essence of the pension *plan* itself ... [U]nder the Texas court's analysis there simply is *no* cause of action if there is no plan."). Moreover, as discussed *infra*, the terms of the plan will help define the services the HMO has undertaken to provide and possibly even limit the HMO's responsibilities under the plan. In addition, plaintiffs' claims arise out of the process that USHC undertakes to choose and supervise its physicians, its financial arrangements with those physicians, and its general relationship with USHC. In fact, the relationship between the parties would not exist if not for the employee benefit plan. Accordingly, I conclude that plaintiffs' cause of action based upon USHC's own negligence in the administration or management of the plan is related to the plan and is, therefore, preempted.

While plaintiffs' claims against defendant based on USHC's own negligence are clearly preempted by ERISA, the law is not as well settled regarding ERISA's preemptive effects on claims of vicarious liability against an HMO. *See* complaint at ¶ 30(a–j). In fact, courts in this district are divided regarding this issue. *See Butler v. Wu, M.D.*, 853 F.Supp. 125, 129 (D.N.J.1994) (agreeing with reasoning in *Altieri*, *Ricci*, and *Dukes* and concluding that ERISA preempts state law claims for alleged negligence); *Dukes*, 848 F.Supp. at 40 (ERISA preempts state law claims of vicarious liability against HMO); *Ricci*, 840 F.Supp. at 317 (same); *but see Stratton v. Bryant*, 1992 U.S.Dist. LEXIS 18050 at *8 (E.D.Pa. Nov. 18, 1992) (claim alleging vicarious liability against HMO does not affect the regulatory scheme

devised by Congress); *Elsesser*, 802 F.Supp. at 1290 (state law claims of vicarious liability against HMO not preempted); *Kohn v. Delaware Valley HMO, Inc.*, 1991 WL 275609 at *2 (E.D.Pa. Dec. 19, 1991) (same), *recons. denied*, 1992 WL 22241 (E.D.Pa. Feb. 5, 1992); *Independence HMO, Inc. v. Smith*, 733 F.Supp. 983, 988 (E.D.Pa.1990) (same).

■ In *Dukes*, the plaintiffs brought a negligence action against USHC claiming that USHC was liable for the negligent acts of the HMO's participating doctors and hospitals. The court held that claims against an HMO on a theory of vicarious liability were preempted by ERISA. The court proffered two reasons to demonstrate that claims based on vicarious liability "relate to" an employer provided benefit plan. First, the court noted that a successful claim would have to establish that the doctors and hospitals were acting as agents for the HMO and, therefore, any agency claim would relate to a benefit plan because it would necessarily require an analysis of what the benefit plan provided. Second, the court found that a medical malpractice claim against an HMO, whether couched in direct or vicarious liability terms, would relate to a benefit plan because the analysis would require an examination of whether the HMO's agents measured up to the benefit plan's promised quality. *See Dukes*, 848 F.Supp. at 41. I find the reasoning in *Dukes* to be persuasive.

Plaintiffs bring their claims against USHC on an agency theory, known in Pennsylvania as an "ostensible agency claim." [5] In Pennsylvania, to establish liability under such a theory, one must demonstrate, first, that there is a likelihood that patients will look to

the institution rather than the individual physician for care, and second, that the HMO holds out the physician as its employee.[6] *Boyd*, 547 A.2d at 1232. Holding out occurs "'when the [HMO] acts or omits to act in some way which leads the patient to a *reasonable* belief he is being treated by the [HMO] or one of its employees.'" *Id.* (quoting *Capan v. Divine Providence Hospital*, 287 Pa.Super. 364, 430 A.2d 647, 649 (1980) (emphasis in original)).

As the court noted in *Boyd*, a determination of whether participating physicians are the ostensible agents of an HMO requires an initial examination of "the arrangement between HMO and participating doctors and their relationship with HMO members." *Id.* In other words, as the court did in *Boyd*, to determine if an agency relationship exists, a court must inspect HMO brochures explaining the features of the program, the HMO directory of participating primary physicians, and the HMO contracts between the HMO, members and participating physicians. *See id.* It is apparent that the analysis of whether an HMO holds its physicians out as its employees relates to, has a connection with, and certainly requires reference to the employee benefit plan. Accordingly, causes of action that *require such a determination*, like those based on an ostensible agency theory, are preempted by ERISA. *See Ricci*, 840 F.Supp. at 317.[7]

In addition, a vicarious liability claim against an HMO is necessarily *related to* a benefit plan because the requisite quantity and quality of services that are required of the doctors and the plan will be determined

---

5. Pennsylvania's ostensible agency theory creates an exception to the general rule that a principal who engaged another to perform services is not liable for torts committed by the person so engaged if that person is an independent contractor. In accepting this theory of agency, the Superior Court of Pennsylvania noted that several jurisdictions had applied the concept to cases involving hospital liability for the negligence of independent contractor physicians. *Boyd v. Albert Einstein Medical Center*, 377 Pa.Super. 609, 547 A.2d 1229, 1232 (1988); *see* Restatement (Second) of Torts § 429 (1965).

6. In *Boyd*, the HMO had advertised that its physicians and medical care providers were compe-

tent and that they had been evaluated for periods of up to six months prior to being selected to participate in the HMO as medical providers. *Boyd*, 547 A.2d at 1232.

7. *Ricci* involved a claim for negligence against USHC alleging that the HMO failed to advise one of the plaintiffs of abnormalities on a mammogram, and that the treatment administered was performed in a negligent manner. It was undisputed that the plaintiffs sought to maintain their cause of action against USHC on a theory of vicarious liability. Finding that the plaintiffs' claim related to their employee benefit plan, the court concluded that it was preempted by ERISA. *Ricci*, 840 F.Supp. at 316–18.

at least partly by the terms of the health benefit plan. When an individual enrolls in an HMO, he/she is "assured of medical services of a given extent and quality. A malpractice claim asserts [that] the services provided did not measure up to the benefit plan's promised quality. The question is one of relating *plan performance* to *plan-promise*, and is therefore pre-empted by ERISA." [8] *Dukes*, 848 F.Supp. at 42 (emphasis added); *see Rollo v. Maxicare of Louisiana, Inc.*, 695 F.Supp. 245, 248 (E.D.La. 1988) (ERISA preempts the plaintiff's claims since they all "have one central feature: the circumstances of [the plaintiff's] medical treatment under his employer's medical services plan for employees."); *Ricci*, 840 F.Supp. at 317 (same); *Altieri*, 753 F.Supp. at 64 (same).[9]

My conclusion that Congress intended to preempt vicarious liability claims against HMO's is buttressed by the anomalous situation that would result where the liability of an HMO would be inversely proportional to the extent of the HMO's involvement in the provision of services. *See Ricci*, 840 F.Supp. at 318. HMO's that are directly negligent would be shielded from state law, while those that did not act improperly would be subject to liability because of the negligent conduct of their participating doctors. Because I do not believe Congress intended such a result,

I conclude for this additional reason that vicarious liability claims against HMO's are preempted by ERISA.[10]

In reaching this decision, I am aware that the result will be different than that reached by some other courts in this district. *See Stratton*, 1992 U.S.Dist. LEXIS 18050 at *8; *Elsesser*, 802 F.Supp. at 1290; *Kohn*, 1991 WL 275609 at *2. These cases rely, at least in part, on the decision in *Independence HMO, Inc.*, 733 F.Supp. at 988. In that case, the court held that a patient's medical malpractice action against an HMO brought under an "ostensible agency" theory was not preempted by ERISA. The court reasoned that state tort actions that impact upon ERISA in an indirect manner that are too tenuous or too remote are not preempted by ERISA. The court found that the suit brought by the patient had "nothing to do with any denial of her rights under the plan ... '[T]he Congressional purpose underlying the breadth of ERISA's preemption provision—to secure uniform federal laws regulating employee benefit plans—is not advanced by preemption of state common law claims which are not premised on a violation of duties imposed by ERISA.'" *Independence HMO, Inc.*, 733 F.Supp. at 988.

I do not agree with the reasoning expressed in *Independence HMO, Inc.* First,

---

**8.** Plaintiffs state in their opposition papers that their claims are premised exclusively on the ostensible agency theory. *See* plaintiffs' opp. at 2. Their claims would still be preempted if they were brought under an actual agency theory which plaintiff alleges as well in their complaint. *See* complaint at ¶ 27. This type of claim would require the existence of an employer-employee relationship. In Pennsylvania, an employer is a principal who employs an agent to render services in his affairs and who has the right to control the physical conduct of the employee in the performance of services. *Shuman Estate v. Weber*, 276 Pa.Super. 209, 419 A.2d 169, 172 (1980). Here, a determination of whether Dr. Wisniewski was an employee or an independent contractor of USHC would require reference to the terms of the contract between the doctor and USHC and an examination of how the HMO managed the benefit plan. Accordingly, if plaintiffs' claims were based on an actual agency theory, they would still be preempted. *See Ricci*, 840 F.Supp. at 317.

**9.** *Altieri* involved facts that are very similar to those in the case at bar. In *Altieri*, the plaintiff brought an action against Cigna Dental Health,

Inc. ("Cigna") and his dentist, claiming that the dentist failed to provide him with the degree of professional care or skill ordinarily exercised by dentists and that Cigna failed to investigate the dentist's competence as a dentist prior to recommending him to patients subscribing to the employer's dental health plan it administered. The court held that the plaintiff's claims of negligence related to the employee benefit plan and, thus, was preempted by ERISA. *Altieri*, 753 F.Supp. at 62–64.

**10.** Moreover, as the court noted in *Ricci*, Congress crafted the breadth of ERISA's preemption provision in an effort to balance many competing interests. The choices reflected in the inclusion of certain remedies and the exclusion of others would be completely undermined if ERISA-plan participants and beneficiaries could obtain remedies under state law that Congress rejected in ERISA. *Ricci*, 840 F.Supp. at 318 (quoting in part *Pilot Life Ins. Co.*, 481 U.S. at 54, 107 S.Ct. at 1556).

for the reasons stated earlier, I find that state law claims against an HMO brought on a theory of vicarious liability *do* affect the regulatory scheme devised by Congress. Second, no Supreme Court case interpreting the broad preemption clause provided in ERISA has limited that provision only to common law claims premised on the violation of duties imposed by ERISA. To the contrary, the Supreme Court has established a much lower standard for ERISA preemption, requiring only that state laws have a connection with or reference to a benefit plan. As a result, ERISA preemption does not only apply to a state law claim based on the express provisions of a benefits plan, it applies to state laws that merely affect the plan in a substantial way.[11] *Pilot Life Ins. Co.,* 481 U.S. at 46–47, 107 S.Ct. at 1552; *Metropolitan Life,* 471 U.S. at 739, 105 S.Ct. at 2388.

Here, at a minimum, a state law that holds an HMO responsible for the acts of its participating doctors would affect the health benefit plan by requiring the health organization to carry additional insurance coverage to protect against claims brought against its doctors. This, ultimately, would result in an increase of costs to the end user. *See Ricci,* 840 F.Supp. at 318. Moreover, HMO's and doctors would inevitably be forced to redefine the relationship between all parties, either to enable the HMO to avoid liability or to compel it to come under the umbrella of responsibility. In any case, it is not the role of the courts to force such action in the face of such an extensive congressional scheme of rules and regulations as provided by ERISA. If Congress desires to alter the balance it

has reached, it has the ability and resources to do so.

It is important to note that HMO's often perform functions akin to those of insurers. *See Butler,* 853 F.Supp. at 130. In fact, HMO's in Pennsylvania are subject to certain Pennsylvania insurance laws. *See* Pa.Stat. Ann. tit. 40, § 1560(b). In this case, defendant argues that it has not acted as a health care provider, rather it finances the health care delivered to the members for a fixed, prepaid fee. *See* defendant's motion at 4; *see also* Pa.Stat.Ann. tit. 40, § 1553 (defining "direct provider" as "an individual who is a direct provider of health care services under a benefit plan of a health maintenance organization or an individual whose primary current activity is the administration of health facilities in which such care is provided); 31 Pa.Code § 301.2 (defining "provider" as "[a] physician, hospital, or other person licensed and practicing within the scope of the license or otherwise authorized in this Commonwealth to furnish health care services."); *Elsesser,* 802 F.Supp. at 1290 ("Although an HMO is not usually liable for the negligence of the independent contractor physicians and health care providers that services the HMO members, an HMO may nevertheless be held liable if the health care provider is the 'ostensible agent' of the HMO."). It is not alleged and there is no suggestion in this record that USHC operates any facility, clinic, hospital or that it is licensed to do so. Accordingly, I conclude from this record that USHC is not a "direct provider" or a "provider" as defined under Pennsylvania law.

Plaintiffs do not dispute that their claims are not based upon the medical treatment

---

11. Both plaintiff here and the court in *Elsesser* rely on the statement by the Court of Appeals for the Third Circuit in *Painters of Philadelphia District Council No. 21 Welfare Fund v. Price Waterhouse* that, "[w]e acknowledge appellants' argument that ERISA's broad preemption provision, 29 U.S.C. § 1144(a), preempts state professional malpractice claims as they relate to ERISA, but we are not persuaded by it." 879 F.2d 1146, 1153 n. 7 (3d Cir.1989). *Price Waterhouse* is wholly inapplicable to the instant case.

*Price Waterhouse* involved a suit by a welfare fund against an accounting firm that performed several yearly audits for the fund. The plaintiff-fund argued, *inter alia,* that ERISA created an implied cause of action in favor of the fund

against its auditors. The court's statement above regarding the breadth of ERISA's preemption was made in the context of refuting the fund's argument that an implied right of action under ERISA was necessary because state professional malpractice claims were preempted by ERISA. This case did not involve whether ERISA preempted state law malpractice claims *against* a benefit plan based generally on the terms of the plan, rather, it concerned a run-of-the-mill state law claim by a fund (client) against its accountants. *See Dukes,* 848 F.Supp. at 42 n. 5 ("I do not believe that *Painters* is applicable to a discussion of 'professional malpractice actions' in a wholly different context.").

actually provided by USHC, stating in their opposition papers that their claims are "premised on the ostensible agency theory by which USHC may be held vicariously liable for the negligence of the treating obstetrician." Plaintiffs' opp. at 2; *see* plaintiffs' opp. at 7 ("Plaintiffs are seeking to hold USHC vicariously liable for the negligence of the treating obstetrician under the ostensible agency theory."). Moreover, plaintiffs' reliance on cases that involve HMO's that do not perform direct medical services and plaintiffs' suggestion that those cases are similar to the instant case also confirm that plaintiffs' claims sound in vicarious liability and not in liability as a direct provider. *See* plaintiffs' opp. at 6. *See also Dukes,* 848 F.Supp. at 40, 42 (not treating United States Health Care Systems of Pennsylvania, Inc. as a direct provider of health care services); *Elsesser,* 802 F.Supp. at 1290 (describing United States Health Care Systems of Pennsylvania, Inc. as an HMO that hires independent contractors to serve as direct providers of health services); *Kohn v. Delaware Valley HMO, Inc.,* 1991 WL 275609 at \*2 (E.D.Pa. Dec. 20, 1991) (U.S. Healthcare, Inc. was not the direct health care provider); *McCarty v. U.S. Healthcare,* 1990 WL 107605 (E.D.Pa. July 26, 1990) (U.S. Health Care, The Health Maintenance Organization of New Jersey, Inc. treated in a manner similar to insurance company rather than direct provider).

Finally, in all five counts of the complaint, plaintiffs allege claims based on the negligence of USHC. *See* plaintiffs' opp. at 7 ("plaintiffs' complaint alleges *only* negligence claims against USHC." (emphasis in original)); *see also Dukes,* 848 F.Supp. at 40 (plaintiff's survival and wrongful death actions are grounded on theories of direct and vicarious liability and, therefore, are preempted); *Nealy,* 844 F.Supp. at 973. Because I have concluded that claims of negligence against an HMO for its own negligence and for the negligence of its participating doctors are preempted by ERISA, and because plaintiffs have not alleged any federal claims under ERISA, USHC's motion to dismiss plaintiffs' complaint shall be granted.

## IV. *CONCLUSION*

Having concluded that this Court has jurisdiction to consider whether plaintiffs' state law claims of medical malpractice are preempted, and having concluded that plaintiffs' state law claims are preempted by ERISA, and having found that plaintiffs have brought no federal claims under ERISA, and for the foregoing reasons, the motion of plaintiffs Linda and Ronald Visconti, individually, and as Administrators of the Estate of Serena Mary Visconti, Deceased, to remand shall be denied and the motion of defendant U.S. Health Care a/k/a The Health Maintenance Organization of Pennsylvania/NJ to dismiss the complaint shall be granted.