Cecilia DUKES, Trustee ad litem of the
Estate of Darryl Dukes, Deceased

v.

UNITED STATES HEALTH CARE SYS-
TEMS OF PENNSYLVANIA, INC.;
Germantown Hospital and Medical Cen-
ter; William W. Banks, M.D.; Charles
R. Drew Mental Health Center; and Ed-
ward B. Hosten, M.D.

Civ. A. No. 93–0577.

United States District Court,
E.D. Pennsylvania.

March 17, 1994.

Stephen C. Josel, Attarah B. Feenane, Stephen C. Josel & Assoc., P.C., Philadelphia, PA, for Cecilia Dukes.

Richard M. Simins, Gilbert F. Casellas, Arline L. Bayo–Santiago, Montgomery, McCracken, Walker & Rhoads, Philadelphia, PA, for U.S. Health Care.

Pamela A. LaTorre, James I. Devine & Associates, Plymouth Meeting, PA, Alan S. Gold, Monaghan & Gold, P.C., Elkins Park, PA, for Germantown Hosp. & Medical Center, William W. Banks, M.D. and Charles R. Drew Mental Health Center.

Joseph Goldberg, Philadelphia, PA, Pamela A. LaTorre, James I. Devine & Associates, Plymouth Meeting, PA, for Edward B. Hosten, M.D.

### MEMORANDUM AND ORDER

DITTER, District Judge.

This case was originally brought in state court and involves allegations of negligence on the part of two doctors, two medical centers, and a health maintenance organization ("HMO"). United States Health Care Systems of Pennsylvania, Inc. ("USHC"), the HMO, has moved to dismiss the claims against it on the ground that the state claims are pre-empted by ERISA. For the reasons set forth below, USHC's motion to dismiss Counts I and II will be granted. Plaintiff's motion to remand will be denied in part and granted in part: counts I and II will not be remanded; counts III through X will be remanded.

## I. FACTS

Plaintiff's decedent, Darryl Dukes, belonged to an employee group health plan administered by USHC. In August, 1990, Mr. Dukes sought medical attention for various complaints. He visited Dr. William W. Banks, M.D., who ordered blood tests, which Germantown Hospital allegedly refused to perform. Decedent visited another doctor, Dr. Edward B. Hosten, M.D., the next day. Dr. Hosten ordered a blood test, which was performed. Decedent's condition apparently worsened and he was admitted to Germantown Hospital, where he died three days later.

Plaintiff, Cecilia Dukes, brought actions in state court against Doctors Banks and Hosten, who had treated Mr. Dukes; Germantown Hospital and Charles R. Drew Mental Health Center, where Drs. Banks and Hosten worked; and USHC. USHC removed Ms. Dukes' suit to this court, contending that her state claims were in fact ERISA claims subject to original jurisdiction here, pursuant to 28 U.S.C. § 1331.[1]

In her third amended complaint,[2] plaintiff makes two claims against USHC. In Count I, a survival action, plaintiff alleges in paragraph 26 that the acts of the defendant doctors and hospitals are imputed to USHC because Mr. Dukes looked to USHC for care and USHC held out the other defendants as its agents and employees. Paragraph 27 then alleges certain negligent acts on the part of USHC including failure to exercise reasonable care in selecting, retaining, screening, monitoring, and evaluating the other defendants. In Count II, a wrongful death action, plaintiff incorporates previous allegations and, in paragraph 35, repeats from paragraph 27 the allegations of USHC's particular acts of negligence. In short, plaintiff contends USHC is liable on a theory of vicarious liability and for its own negligence.

As with the other complaints, USHC has moved to dismiss the claims against it, argu-

---

1. Dukes does not dispute that her husband's health plan was an employee benefit plan covered by ERISA, 29 U.S.C. §§ 1001, *et seq.*

2. All parties refer to this complaint as the "third amended complaint," although in fact it is the second *amended* complaint, albeit the third complaint overall.

ing that the claims are "related to" an ERISA plan and are therefore pre-empted by ERISA.

## II.  DISCUSSION

█  In crafting ERISA, Congress adopted a broad pre-emption clause.  29 U.S.C. § 1144(a).  That section, ERISA's Section 514(a), provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter *relate* to any employee benefit plan...."  *See Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 138, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990) (emphasis added) (describing "conspicuous" breadth of ERISA's pre-emption clause).  Pre-emption applies both to state statutory and common law claims.  *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 47, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987).  It follows that if a cause of action brought under state law provisions has some connection with or reference to an employee benefit plan, it "relates" to that plan for ERISA purposes and is governed solely by ERISA.  *Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983).  Despite the broad scope of the pre-emption clause, there are limits.  *See, e.g., Mackey v. Lanier Collection Agency & Serv.,* 486 U.S. 825, 833, 108 S.Ct. 2182, 2187, 100 L.Ed.2d 836 (1988) (state garnishment of ERISA welfare benefit plan not pre-empted;  dicta states that ERISA plans can be sued for other, run-of-the-mill state law violations such as unpaid rent, failure to pay creditors, and torts which are unrelated to the plan's administration).

█  Several courts in this district and elsewhere have held that ERISA pre-empts state claims that seek to hold an HMO liable for injuries resulting from the HMO's own negligent administration of cost-containment procedures and funding decisions.  *Kuhl v. Lincoln Nat'l Health Plan,* 999 F.2d 298, 303 (8th Cir.1993) (ERISA pre-empts plaintiff's claim against HMO for denying surgery pre-

certification), *cert. denied,* —— U.S. ——, 114 S.Ct. 694, 126 L.Ed.2d 661 (1994);  *Corcoran v. United Healthcare, Inc.,* 965 F.2d 1321, 1331 (5th Cir.)  (ERISA pre-empts claim for erroneous medical decision made in context of determining plan benefits), *cert. denied,* —— U.S. ——, 113 S.Ct. 812, 121 L.Ed.2d 684 (1992);  *Elsesser v. Hospital of the Phila. College of Osteopathic Medicine,* 802 F.Supp. 1286, 1290–91 (E.D.Pa.1992) (ERISA pre-empts direct liability claim for failure to provide funding for medical device);  *Kohn v. Delaware Valley HMO,* No. 91–2745, 1991 WL 275609, at *5 (E.D.Pa. Dec. 20, 1991) (same).  The basis for ERISA pre-emption in those cases is that a claim for failure to pay a benefit claim or pre-approve a procedure has an obvious connection or reference to a benefit plan and therefore "relates" to it.

Some courts in this district have held, however, that ERISA does not pre-empt state law claims against an HMO sued on a theory of vicarious liability generally or ostensible agency specifically[3].  *Stratton v. Bryant,* No. 92–3873, 1992 U.S.Dist. LEXIS 18050, at *8 (E.D.Pa. Nov. 18, 1992) (plaintiff's claim alleging vicarious liability of HMO which recommended allegedly negligent doctor not pre-empted);  *Elsesser,* 802 F.Supp. at 1290 (plaintiffs' claim alleging vicarious liability of HMO for actions of physician acting ostensibly as HMO's agent not preempted);  *Kohn,* 1991 WL 275609 at *2 (same);  *Independence HMO v. Smith,* 733 F.Supp. 983, 988 (E.D.Pa.1990) (same).  These cases conclude that the negligence claims have nothing to do with a denial of rights under a benefit plan since they do not affect the regulatory scheme devised by Congress in ERISA and thus are not sufficiently "related to" ERISA so as to warrant pre-emption.  *E.g., Stratton,* 1992 U.S.Dist. LEXIS 18050 at *8;  *Smith,* 733 F.Supp. at 988.

---

3.  The theory of ostensible agency is set forth in the Restatement (Second) of Agency § 267.  It states:

One who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care of skill of such apparent agent is subject to liability to the

third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such.  *See also Boyd v. Albert Einstein Med. Center,* 377 Pa.Super. 609, 547 A.2d 1229, 1234 (1988) (adopting this section).

In my view, the same connections to a plan and policy reasons apply whether the claim is for the HMO's own negligence or is being asserted against the HMO on the theory of vicarious liability.

■ To sustain a claim under a theory of ostensible agency, a plaintiff must show that he or she looked to the HMO for medical care and that the HMO held out the supposedly negligent doctor as its employee. *Elsesser*, 802 F.Supp. at 1289–90; *Boyd v. Albert Einstein Med. Ctr.*, 377 Pa.Super. 609, 547 A.2d 1229, 1233 (1988). Paragraph 26 of plaintiff's complaint follows the *Elsesser* language and alleges that her husband looked to USHC (rather than to the individual doctors) for care, and that USHC held out those doctors and hospitals as its agents and employees. This language adequately sets forth a claim based on ostensible agency.[4] I conclude, however, that ERISA's pre-emption provision encompasses claims that are based on a theory of ostensible agency for two reasons: First, any ostensible agency claim must be made on the basis of what the benefit plan provides and is therefore "related" to it. Second, the treatment received must be measured against the benefit plan and is therefore also "related" to it.

■ A claim against an HMO based on the ostensible agency of a physician will necessarily involve an examination of what representations were made to its members to determine if the HMO in fact "held out" the

physician as its employee. In this case, for example, in order to determine if USHC held out Drs. Hosten and Banks as its employees, the court would have to probe the information USHC provided to Mr. Dukes and how USHC described the relationship between itself and the doctors and hospitals. USHC did not give Mr. Dukes such information in a vacuum. Rather, it would only have done so as part of some description or explanation of the benefit plan. A claim based on such references, descriptions, or explanations is "related to" the benefit plan. Matters relating to a benefit plan are pre-empted by ERISA.

■ The second reason is equally persuasive: a medical malpractice claim against an HMO, whether couched in direct or vicarious liability terms relates to the benefit plan[5]. One who enrolls in an HMO is assured of medical services of a given extent and quality. A malpractice claim asserts the services provided did not measure up to the benefit plan's promised quality. The question is one of relating plan performance to plan-promise, and is therefore pre-empted by ERISA. *See* William A. Chittenden, III, "Malpractice Liability and Managed Health Care: History and Prognosis," 26 Tort & Insur.L.J. 451 (Spring 1991).

Two courts have held recently that ERISA pre-empts state law negligence claims against a benefit plan for the alleged malpractice of the plan's providers because the

---

4. Having alleged ostensible agency in paragraph 26, Dukes then enumerates in paragraph 27 certain negligent acts committed by USHC, including failing to use reasonable care in selecting, retaining, and evaluating health care providers; failing to supervise, monitor, and oversee those providers adequately; and failing to provide competent and qualified physicians. I recognize that the court in *Elsesser* considered these allegations as allegations of vicarious liability. 802 F.Supp. at 1290 (discussing paragraph ii of plaintiff's complaint). I respectfully disagree with that characterization. Rather, I find that the allegations in paragraph 27—similar to those of paragraph ii of the *Elsesser* complaint—all sound in *direct* negligence and seek to hold USHC directly liable for its own conduct. Vicarious liability, in contrast, is liability for conduct not the fault of the principal. A claim based on the allegations of direct negligence in paragraph 27 would involve examination of how the plan is operated: how USHC chooses its doctors and

hospitals, how USHC decides with which doctors and hospitals it will affiliate, whether the doctors are employees of USHC subject to USHC's control or independent contractors. I find that such a claim, involving USHC's administration of the benefit plan, is related to the plan and is pre-empted by ERISA.

5. The Third Circuit has held that "ERISA does not generally pre-empt state professional malpractice actions." *Painters of Philadelphia District Council No. 21 Welfare Fund v. Price Waterhouse*, 879 F.2d 1146, 1153, n. 7 (3d Cir.1989). *Painters* is distinguishable from the case at bar. *Painters* involved a suit *by* a benefit plan against its professional auditor, not a medical malpractice suit *against* a plan. I do not believe that *Painters* is applicable to a discussion of "professional malpractice actions" in a wholly different context.

claims arise from the delivery of health benefits and thus relate to a benefit plan. *Ricci v. Gooberman*, 840 F.Supp. 316, 317 (D.N.J. 1993); *Altieri v. Cigna Dental Health, Inc.*, 753 F.Supp. 61, 64 (D.Conn.1990). *Altieri* involved a claim for dental malpractice in which the plaintiff sued both his dentist and his dental health plan, alleging that the health plan had failed to investigate the dentist's competence before recommending the dentist to patients. 753 F.Supp. at 62. As did Cecilia Dukes, the plaintiff in *Altieri* alleged that the benefit plan was negligent in not evaluating its medical provider and in failing to provide plaintiff with competent professional care. *Id.* The court held that the central feature of the plaintiff's claim was the circumstances of medical treatment under his health services plan, and that the claim was therefore related to a benefit plan and pre-empted by ERISA. *Id.* at 64.

The plaintiffs in *Ricci* sought to hold an HMO liable under a theory of vicarious liability for a doctor's failing to advise plaintiff of certain test abnormalities and for careless, reckless treatment. 840 F.Supp. at 316. As did the court in *Altieri*, the court reasoned that the basis of the plaintiffs' claim was the circumstances of Ms. Ricci's medical treatment under her employee medical services plan. *Id.* at 317. Therefore, the court held, the negligence claim "related to" a benefit plan and was pre-empted by ERISA[6]. *Id.*

■ In summary, I hold that plaintiff's complaint against USHC is pre-empted by ERISA for two reasons. First, plaintiff's allegations of ostensible agency "relate to" Mr. Dukes' benefit plan because the allegations focus on how USHC described to Mr. Dukes its plan benefits and its relationship with its care-providers. Second, I find persuasive the reasoning of *Altieri* and *Ricci* that a malpractice claim against an HMO "relates to" a benefit plan because the claim is based on the circumstances of medical treatment provided pursuant to the plan. Finally, I note a serious reservation about the policy implications of holding an HMO liable for state law claims arising from the negligence of physicians and hospitals. If an HMO such as USHC is obliged to act as a malpractice insurer for health care providers, higher costs will invariably be passed along to health care consumers. I do not comment on whether this spreading of risk and costs is desirable. Rather, I simply hesitate to approve such a potentially widesweeping policy. Congress spent considerable time and effort in debating and passing ERISA, and may soon put similar efforts into so-called health care "reform." If the legislature wishes to examine the scope of ERISA pre-emption so as to extend malpractice liability to health benefit plans, now may be an appropriate time for it to do so. It does not follow that I should do so.

For all these reasons, I conclude that ERISA pre-empts the claims in counts I and II which charge USHC with violation of state law. These counts must be dismissed without prejudice. Therefore, USHC's removal of the suit to this court was proper. Plaintiff's motion to remand counts I and II must be refused. The remaining state claims for survival and wrongful death against the other defendants, however, are now solely state claims and must be remanded to the Court of Common Pleas of Philadelphia County. An appropriate order follows.

## ORDER

AND NOW, this 17th day of March, 1994, it is hereby ordered that:

1. Defendant, United States Health Care Systems of Pennsylvania, Inc.'s, motion to dismiss Counts I and II is GRANTED;

2. Plaintiff's motion to remand Counts I and II is DENIED; and

3. Plaintiff's motion to remand Counts III through X is GRANTED, and those claims

---

6. Another reason that a malpractice claim premised on the vicarious liability theory of actual, rather than ostensible, agency relates to a benefit plan is that such a claim would necessarily involve determining if an allegedly negligent doctor was the employee/agent of the HMO. The claim would require examining the HMO-provider contracts and the HMO's management of the benefit plan. It could then be viewed as "related to" the benefit plan and would therefore be pre-empted. *See Ricci*, 840 F.Supp. at 317.

**44**

are remanded to the Court of Common Pleas of Philadelphia County.