Patrick **POMEROY**, et al., Plaintiffs,

v.

**JOHNS HOPKINS MEDICAL SERVICES, INC., et al., Defendants.**

Civ. A. No. MJG–94–2236.

United States District Court, D. Maryland.

Oct. 17, 1994.

Donald Eugene Kaplan, Donald E. Kaplan, P.A., Pikesville, Maryland, for plaintiffs.

Jonathan D. Smith, Piper and Marbury, Baltimore, MD, for Johns Hopkins Medical Services, Inc. and Dr. Moyses Purisch.

Bryan D. Bolton, Derek Barnet Yarmis, Shapiro & Olander, Baltimore, MD, for Prudential Health Care Plan.

GARBIS, District Judge.

The Court has before it Defendant Prudential Health Care Plan, Inc.'s Motion to Dismiss Second Amended Complaint[1], or in the alternative, for Summary Judgment. The Court has considered the legal memoranda submitted by the parties and has held a hearing to have the benefit of the arguments of counsel.

## I. BACKGROUND

In 1988, Plaintiffs Patrick and Barbara Pomeroy became members of the Prudential Health Care Plan of the Mid–Atlantic ("the Plan"), an employee benefits plan offered through Barbara Pomeroy's employer, Maryland Insurance Group. Defendant Prudential Health Care Plan, Inc. ("Prudential"), the company that offers the Plan, is a licensed Health Maintenance Organization ("HMO") operating in the State of Maryland.

Plaintiffs allege that in April of 1990, Patrick Pomeroy was diagnosed with diplopia, a medical condition requiring surgery. Prudential allegedly refused to pay for surgery. In September of 1990, Patrick Pomeroy was diagnosed with chronic back pain, severe depression, and a facial tic. Again, Prudential refused to pay for proper and necessary medical treatment. Additionally, Plaintiffs maintain that as a result of Prudential's refusal to pay for appropriate medical treatment, Patrick Pomeroy has become addicted to the prescription drug percodan, and that Prudential has refused to pay for drug dependency treatment.

In the Second Amended Complaint, Plaintiffs bring six counts, the first four of which are directed at Defendant Prudential and the last two against other defendants. Count I is a claim brought expressly pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, to enforce Plaintiffs' benefit rights and to clarify their future benefits under the Plan. Counts II through IV are brought under the common law theories of medical malpractice, direct and vicarious negligence, and intentional infliction of emotional distress, respectively. Counts V and VI assert purely common law claims against the treating physician and his employer.

Defendant Prudential has moved to dismiss all four Counts asserted against them. Defendants assert first that Plaintiffs' state law claims are preempted by Section 514(a) of ERISA, and second, that given Plaintiffs' failure to exhaust their internal remedies under the Plan, Plaintiffs do not now present any valid cause of action within the Court's jurisdiction. As discussed below, the Court finds that Plaintiffs' state law claims are preempted by ERISA Section 514(a). Since Plaintiffs have voluntarily dismissed without prejudice their ERISA claims, the exhaustion of remedies defense is moot.

## II. PREEMPTION OF PLAINTIFFS' STATE LAW CLAIMS

■ The federal Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* (ERISA), is a comprehensive statute designed to promote the interests of employees and their beneficiaries by regulating the creation and administration of employee pension and benefit plans. *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 137, 111 S.Ct. 478, 481, 112 L.Ed.2d 474 (1990), citing *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90, 103 S.Ct. 2890, 2890, 77 L.Ed.2d 490 (1983). Consistent with its intent to create a comprehensive, uniform federal scheme for regulation of employee benefit plans, Congress drafted ERISA's pre-emption clause in broad terms. *Ingersoll–Rand Co. v. McClendon,* 498 U.S. at 137, 111 S.Ct. at 482. Under section 514(a) of ERISA, as set forth in 29 U.S.C. § 1144(a), Congress preempted "all State laws insofar as they may now or here-

---

1. This case was originally filed in the Maryland Health Claims Arbitration Board and was brought to this Court by Defendant Prudential's removal of E.R.I.S.A. claims.

after relate to any employee benefit plan." Statutory mandates, court decisions, and state law from all other sources are included within the preemption clause. 29 U.S.C. 1144(c)(1).

The Prudential Health Care Plan of the Mid Atlantic is indisputably an employee benefit plan governed by ERISA.[2] The question then becomes whether Plaintiffs' state law claims based on state common law theories of liability are preempted by ERISA Section 514(a).

Determining whether a particular state law is preempted by ERISA presents, fundamentally, a question of determining legislative intent. *Ingersoll–Rand,* 498 U.S. at 137–38, 111 S.Ct. at 482. The Supreme Court repeatedly has concluded that Congress intended the preemption clause to be construed extremely broadly. *See, e.g., FMC Corp. v. Holliday,* 498 U.S. 52, 58, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990); *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983).

■ The critical determination governing preemption is whether the state law asserted "relates to" an ERISA plan. 29 U.S.C. § 1144(a). A law "[clearly] 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw,* 463 U.S. at 96–97, 103 S.Ct. at 2900. The law need not expressly address a benefit plan to be preempted, however. Under the "broad common-sense meaning" given to the preemption clause by the Supreme Court, a state law may "relate to" a benefit plan, and thereby be preempted, even if the law is not specifically designed to affect such plans, or the effect is only indirect. *Ingersoll–Rand,* 498 U.S. at 139, 111 S.Ct. at 483; *Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 47, 107 S.Ct. 1549, 1552–53, 95 L.Ed.2d 39 (1987). In other words, state law *claims* which relate to the administration of an ERISA-governed plan, but which arise under

general state *laws* which themselves have no impact on employee benefit plans, fall within the scope of ERISA preemption. *Powell v. Chesapeake & Potomac Telephone Co. of Va.,* 780 F.2d 419, 421 (4th Cir.1985), *cert. denied,* 476 U.S. 1170, 106 S.Ct. 2892, 90 L.Ed.2d 980 (1986) (emphasis in original).

■ The Supreme Court has recognized certain limitations on the breadth of ERISA preemption. For example, in *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), the Court held that "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw,* 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21. Similarly, in *Mackey v. Lanier Collection Agency and Serv., Inc.,* 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), the Court held that "lawsuits against ERISA plans for run-of-the-mill state-law claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan" are not contemplated by Congress as subject to preemption. *Id.,* 486 U.S. at 833, 108 S.Ct. at 2187. Plaintiffs rely on this language to argue that their claims qualify as "run-of-the-mill" state tort law claims which affect only remotely their benefit plan.

It is important to observe, however, that the cases to which the *Mackey* Court referred as containing examples of "run-of-the-mill" claims involved lawsuits in which the plaintiff was a *third party* suing an ERISA plan, not a *plan participant* suing (in such capacity) his or her plan provider. *See Nealy v. U.S. Healthcare HMO,* 844 F.Supp. 966, 971 (S.D.N.Y.1994) (distinguishing *Mackey* and listing Supreme Court examples of non-preemption). By contrast, Plaintiffs' action involves a plan participant suing the plan administrator over allegedly improper denials of medical benefits provided under the terms of the plan. Far from affecting an employee benefit plan in a "tenuous, remote or peripheral" manner, plaintiffs' claims are

---

**2.** As defined under ERISA, an "employee welfare benefit plan" is "any plan ... established or maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment." 29 U.S.C. § 1002(1). In turn, the term "employee benefit plan" is defined to include "an employee welfare benefit plan." 29 U.S.C. § 1002(3).

centered on the parties' rights and duties under the plan.

Because Plaintiffs' allegations are essentially complaints about the administration of claims under an employee benefit plan, the Court finds that Counts II through IV all "relate to" the Plan and are therefore preempted by ERISA § 514(a). To begin with, in Paragraph 12 of their Second Amended Complaint, incorporated by reference into Counts I through IV, Plaintiffs allege that on several occasions Defendant Prudential refused to pay for necessary and proper medical treatment. Theoretically speaking, Prudential would incur liability for this refusal, if at all, only if it had an obligation to pay for Plaintiffs' treatment. Therefore, any analysis of these claims requires an examination of the benefits offered under the plan and Prudential's duties in administering those benefits.

In Count II, Plaintiffs allege that as a result of Prudential's medical malpractice (a claim sounding in negligence), Patrick Pomeroy suffered serious economic, mental and physical losses. Distilled to its basics, Count II alleges that Prudential was negligent in the selection, inspection, and review of Johns Hopkins Medical Services (JHMS) and treating physician Dr. Purisch as health care providers and that Prudential delegated certain nondelegable duties to these providers.[3] In turn, these claims reduce to allegations that Prudential failed to provide Plaintiffs with the kind and amount of health care benefits to which they were entitled as Plan partici-

pants and beneficiaries, and thus failed to fulfill its job as administrator of Plaintiffs' medical care claims.[4]

In Count III, Plaintiffs claim that "Prudential has breached the duty owed to the Plaintiffs vicariously and is negligent vicariously" for the above stated conduct. Second Amended Complaint at ¶¶ 23, 24. As with Count II, this claim is based upon the duty created by the Plan and the obligations owed to Plaintiffs on account of their participation in the Plan. Any theory based on vicarious liability or ostensible agency would require Plaintiffs to show that they looked to the HMO for medical care and that the HMO held out the supposedly negligent doctor or facility as its employee. In fact, Plaintiffs have alleged just these facts.[5] Because these claims will necessarily involve an examination of what representations were made to Plaintiffs to determine whether Prudential in fact "held out" JHMS and Dr. Purisch as its employees, an inquiry which would ultimately focus on some description or explanation of the benefit plan, this claim is inescapably "related to" the plan. *See Dukes v. U.S. Health Care Systems of Pennsylvania,* 848 F.Supp. 39, 42 (E.D.Pa.1994). Thus,

> [A] medical malpractice claim against an HMO, whether couched in direct or vicarious liability terms relates to the benefit plan. One who enrolls in an HMO is assured of medical services of a given extent and quality. A malpractice claim asserts the services provided did not measure up to the benefit plan's promised quality.

---

**3.** Specifically, Plaintiffs contend that: (A) Prudential was negligent in selecting JHMS as a health care provider for the Plaintiffs; (B) Prudential was negligent in selecting Dr. Purisch as a health care provider for the Plaintiffs; (C) Prudential was negligent in the inspection and review of JHMS medical care provided to Plaintiffs; (D) Prudential was negligent in inspection and review of Dr. Purisch's medical care provided to Plaintiffs; (E) Prudential was negligent in failing to exercise control over the medical care provided by JHMS and Dr. Purisch on the Plaintiffs; (F) Prudential negligently delegated nondelegable duties required by laws of the State of Maryland involving HMOs and the required standard of care for its members, to JHMS and Dr. Purisch; and (G) that Prudential was negligent in failing to pay for medical services that Plaintiff Patrick Pomeroy required. Second Amended Complaint, ¶ 17.

**4.** Count II further alleges that "Prudential owed a duty and breached its duty to either provide or ensure that Plaintiff Patrick Pomeroy received the proper medical care through its contracted providers, as a special relationship existed [sic] that of Prudential as a health care provider, and Plaintiff Patrick Pomeroy as a patient." *Id.* at ¶ 19. This allegation merely repeats Plaintiffs' assertion that Prudential failed to fulfill its fiduciary duty to provide or administer adequate and proper health care, a duty created and defined by the relationship established between Prudential and the Plaintiffs through the Plan.

**5.** Plaintiffs allege that "Prudential held out JHMS and Dr. Purisch as its, Prudential's, employees working within the scope of their employment." Second Amended Complaint ¶ 18.

The question is one of relating plan performance to plan-promise, and is therefore preempted by ERISA.

*Id.* (footnote omitted) *See also Nealy v. U.S. Healthcare HMO,* 844 F.Supp. 966, 972 (S.D.N.Y.1994) (holding ERISA preempts state law negligence claims against a benefit plan administrator for the alleged malpractice of the plan's providers because the claims arise from the delivery of health benefits and thus relate to a benefit plan); *Ricci v. Gooberman,* 840 F.Supp. 316, 317 (D.N.J. 1993) (same); *Altieri v. Cigna Dental Health, Inc.,* 753 F.Supp. 61, 64 (D.Conn. 1990) (same).

Lastly, in Count IV, Plaintiffs allege that "Prudential's conduct of refusing to provide Plaintiff with the proper and necessary medical treatment was intentional, or was so reckless as to inflict emotional distress." Second Amended Complaint, ¶ 28. Once more, in order to determine whether Prudential's decision to deny medical treatment was a violation of its fiduciary duty, the factfinder must refer to the Plan itself, which would not only be the source of any fiduciary duty for Prudential as a health care administrator, but would ultimately define the "necessary and proper" kind and amount of health care to which Plaintiffs were entitled.

In short, Plaintiffs' claims are preempted because they all have "one-central feature: the circumstances of [plaintiffs'] medical treatment under [an employee benefit plan]." *Rollo v. Maxicare of La., Inc.,* 695 F.Supp. 245, 248 (E.D.La.1988). In ruling on Plaintiffs' claims, it would be necessary to determine the benefits that the ERISA plan was to provide to Patrick Pomeroy and how these benefits were administered by Prudential. In essence, the "very existence and core of the plan would have to be scrutinized." *Nealy v. U.S. Healthcare HMO,* 844 F.Supp. 966, 972 (S.D.N.Y.1994). Stated in a different way, "if [plaintiffs'] claims were stripped of their link to the [benefit plan], they would cease to exist." *Christopher v. Mobil Oil Corp.,* 950 F.2d 1209, 1220 (5th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 68, 121

L.Ed.2d 35 (1992). Therefore, although Plaintiffs' claims are drafted in state common law terms of medical malpractice, negligence, and intentional infliction of emotional distress, they are nonetheless integrally and inextricably "related to" their employee benefit plan. Indeed, the gravamen of their action against Prudential is for the substandard performance of its fiduciary duty as health care administrator. *See Kuhl v. Lincoln National Health Plan of Kansas City, Inc.,* 999 F.2d 298, 303 (8th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 694, 126 L.Ed.2d 661 (1994) ("Artful pleading by characterizing [the provider's] actions in refusing to pay for the surgery . . . or by characterizing the same administrative decisions as 'malpractice' does not change the fact that plaintiffs' claims are based on the contention that [the plan provider] improperly processed [plaintiff's] claim for medical benefits."); *Nealy v. U.S. Healthcare HMO,* 844 F.Supp. 966, 973 (S.D.N.Y.1994) ("[N]o matter how the claim is pleaded, state law claims of medical malpractice are preempted by ERISA.")

### III. PLAINTIFFS' CLAIMS DO NOT FALL WITHIN THE "SAVINGS CLAUSE"

Plaintiffs argue that even if their claims were found to "relate to" the employee benefit plan, they would not be preempted by ERISA Section 514(a) because the claims fall within ERISA Section 514(b), the "savings clause." Section 514(b) provides an exemption from ERISA's broad preemption provision for claims based on state law "regulating insurance." 29 U.S.C. § 1144(b)(2)(A).[6]

Plaintiffs' argument fails for two reasons. First, Prudential may not be deemed an insurer merely because of its status as an HMO or administrator of an employee benefit plan. In fact, the ERISA subsection immediately following the "savings clause" expressly states that no "employee benefit plan . . . shall be deemed to be an insurance company or other insurer, . . . or to be engaged in the business of insurance . . . for purposes

---

**6.** Under 29 U.S.C. § 1144(b)(2)(A), "[N]othing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities."

of any law of any State purporting to regulate insurance companies." 29 U.S.C. § 1144(b)(2)(B). Moreover, courts have repeatedly held that an HMO is not in "the business of insurance" for the purpose of the ERISA savings clause. *O'Reilly v. Ceuleers,* 912 F.2d 1383, 1389 (11th Cir.1990); *Travelers Ins. Co. v. Cuomo,* 813 F.Supp. 996, 1007 (S.D.N.Y.1993), *aff'd in relevant part,* 14 F.3d 708 (2d Cir.1993), *cert. granted,* —— U.S. ——, 115 S.Ct. 305, 130 L.Ed.2d 217 (1994); *Dearmas v. Av–Med, Inc.,* 814 F.Supp. 1103, 1107–08 (S.D.Fla.1993).

■ Second, the state laws upon which Plaintiffs rely do not "regulate insurance" within the meaning of the savings clause. In *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 49–50, 107 S.Ct. 1549, 1555, 95 L.Ed.2d 39 (1987), the Supreme Court set forth its test for determining whether a law "regulates insurance" for ERISA purposes. The Court first offered a "common sense" approach: "A common-sense view of the word 'regulates' would lead to the conclusion that in order to regulate insurance, a law must not just have an impact on the insurance industry, but must be *specifically directed toward that industry.*" *Pilot Life,* 481 U.S. at 50, 107 S.Ct. at 1554 (emphasis added). Next, by way of analogy, the Court examined the state laws in light of the three factors used to determine whether a practice falls under the "business of insurance" for purposes of the McCarran–Ferguson Act, an act which reserved regulation of insurance to the states:[7]

> *[F]irst,* whether the practice has the effect of transferring or spreading a policyholder's risk; *second,* whether the practice is an integral part of the policy relationship between the insurer and the insured; and *third,* whether the practice is limited to entities within the insurance industry.

*Pilot Life,* 481 U.S. at 48–49, 107 S.Ct. at 1553, quoting *Union Labor Life Ins. Col. v. Pireno,* 458 U.S. 119, 129, 102 S.Ct. 3002,

3009, 73 L.Ed.2d 647 (1982) (emphasis in original).

In *Pilot Life,* the Court found that even though Mississippi common law of bad faith had been applied to the insurance industry, "the roots of this law are firmly planted in the general principles of Mississippi tort and contract law," and therefore did not specifically regulate insurance within a "common-sense" understanding. *Pilot Life,* 481 U.S. at 50, 107 S.Ct. at 1555. The Court further concluded that the common law of bad faith did not "regulate insurance" as delineated under the McCarran–Ferguson test. *Id.* 481 U.S. at 50–51, 107 S.Ct. at 1555.

Similarly, whereas state tort common law may affect insurance companies and the business of insurance, it is neither specifically directed toward insurance activities, nor uniquely applied to that industry. Moreover, general tort principles do not have the effect of spreading a policyholder's risk, and while they arguably may be an integral part of the policy relationship between an insurer and an insured, the principles are not limited to entities within the insurance industry. Therefore, even if Prudential was determined to be an insurer, Plaintiffs claims would not be exempt from preemption because the common law upon which they rely does not "regulate insurance" within the meaning of the ERISA savings clause.

In light of this analysis, several circuits have concluded that "when an insurance company merely acts as an administrator, its activities are not within the insurance exception savings clause." *O'Reilly v. Ceuleers,* 912 F.2d 1383, 1389 (11th Cir.1990); *Howard v. Parisian, Inc.,* 807 F.2d 1560, 1565 n. 2 (11th Cir.1987) ("[The insurance exception] applies only to state laws that regulate the business of insurance and not to state laws that merely affect insurance companies in some way."); *Insurance Bd. of Bethlehem Steel Corp. v. Muir,* 819 F.2d 408 (3rd Cir. 1987) (administrator of benefit plan not en-

---

7. Regulation of the "business of insurance" is expressly reserved to the states by the McCarran–Ferguson Act, 15 U.S.C. §§ 1011–1015. Because ERISA's insurance saving clause is similarly worded and reflects the concerns of McCarran–Ferguson, it is construed to cover the same category of state insurance regulation. *See Metropol-*

*itan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 745 n. 21, 105 S.Ct. 2380, 2392 n. 21, 85 L.Ed.2d 728 (1985) ("The ERISA savings clause ... appears to have been designed to preserve the McCarran–Ferguson Act's reservation of the business of insurance to the States.")

gaged in the "business of insurance" under ERISA savings clause).

The Fourth Circuit has likewise declared:

We read the insurance savings clause ... to exempt from ERISA's preemptive effect only those state insurance laws that regulate the "business of insurance." Regulation of the "business of insurance" is expressly reserved to the states by the McCarran–Ferguson Act.... The [McCarran–Ferguson] Act did not, however, "purport to make the State supreme in regulating all the activities of insurance *companies*.... [O]nly when they are engaged in the "business of insurance" does the statute apply.

*Powell v. Chesapeake & Potomac Telephone Co. of Va.*, 780 F.2d 419, 423 (4th Cir.1985), *cert. denied*, 476 U.S. 1170, 106 S.Ct. 2892, 90 L.Ed.2d 980 (1986) (emphasis in original; citations and footnote omitted). *See also Custer v. Pan American Life Ins. Co.*, 12 F.3d 410, 419–20 (4th Cir.1993). In the recent case of *Tri–State Machine, Inc. v. Nationwide Life Ins. Co.*, 33 F.3d 309 (4th Cir.1994), the Fourth Circuit reaffirmed its narrow construction of the savings clause to encompass only regulation of the "core business of insurance." In *Tri–State*, the court held that although the West Virginia Unfair Trade Act did prohibit certain practices in insurance activities, it did not qualify for exception from preemption under the savings clause. As the court reasoned: "[T]his type of regulation is not unique to the business of insurance, and it does not target ... the core business of insurance which involves contracts of protection under which risk is spread among policy holders." *Id.* at 314.

Similarly, although state tort law of malpractice, negligence, and intentional infliction of emotional distress may affect the activities of insurers and HMO administrators, such general principles of tort law do not regulate the unique and core "business of insurance." Thus, Plaintiffs claims do not fall within the contemplation of ERISA's insurance savings clause and are not· excepted from ERISA preemption.

## IV. CONCLUSION

In summation, Plaintiffs' state common law claims for medical malpractice, vicarious negligence, and intentional infliction of emotional distress all "relate to" their employee benefit plan as administered by Prudential. Those claims, therefore, are preempted by ERISA Section 514(a). Moreover, because Prudential cannot be deemed an "insurer" by reason of its HMO or employee benefit plan administrator status, and because the state common law principles upon which Plaintiffs rely do not regulate the core "business of insurance," these claims are not excepted from preemption under the ERISA "savings clause." Thus, because these claims are preempted by ERISA, and Plaintiffs' ERISA claim has been dismissed without prejudice, the Court is left with no claim against Defendant Prudential.

The Court recognizes that preemption of Plaintiffs' state law claims may leave the Plaintiffs without an adequate remedy from Prudential for their alleged damages. The Supreme Court has made clear, however, that ERISA is to be broadly construed so as to preserve the "comprehensive legislative scheme [which includes] an integrated system of procedures for enforcement," *Pilot Life*, 481 U.S. at 54, 107 S.Ct. at 1556, quoting *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 147, 105 S.Ct. 3085, 3093, 87 L.Ed.2d 96 (1985). The Supreme Court has also repeatedly affirmed its reluctance "to tamper with an enforcement scheme crafted with such evident care as the one in ERISA." *Id.* Accordingly, courts addressing the issue have consistently held that the resultant preclusion of remedy does not bar the operation of ERISA preemption. *See Smith v. Dunham–Bush, Inc.*, 959 F.2d 6 (2nd Cir.1992) (citing cases from the Sixth, Fifth, Tenth, and Eleventh Circuits); *Corcoran v. United Healthcare, Inc.*, 965 F.2d 1321, 1333 (5th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 812, 121 L.Ed.2d 684 (1992); *Dukes v. U.S. Health Care Systems of Pennsylvania*, 848 F.Supp. 39, 43 (E.D.Pa.1994). Ultimately, whether the ERISA civil enforcement provisions must be reexamined and reformed in light of modern health care is an

issue which must be addressed and resolved by the legislature rather than the courts.

For the foregoing reasons:

1. Defendant Prudential Health Care Plan, Inc.'s Motion to Dismiss Second Amended Complaint, or in the alternative, for Summary Judgment is:

a. **GRANTED** as to dismissal.

b. **DENIED AS MOOT** with regard to summary judgment.

2. Count I is hereby **DISMISSED WITHOUT PREJUDICE.**

3. Counts II, III and IV are hereby **DISMISSED WITH PREJUDICE.**

4. By separate Order, Counts V and VI (against the remaining Defendants) shall be remanded to state proceedings.