Merle JACKSON, Plaintiff,

v.

Barry ROSEMAN, D.M.D., M.D., Defendant,

MD–Independent Practice Associates, Inc., t/a MD–IPA, Defendant,

and

Mid Atlantic Medical Services, Inc., Defendant.

Merle JACKSON, Plaintiff,

v.

Barry ROSEMAN, D.M.D., M.D., et al., Defendants.

Civ. No. N–94–3184.

United States District Court, D. Maryland.

Feb. 21, 1995.

Louis G. Close, Jr., and Jonathan Schochor, Schochor, Federico & Staton, and Elizabeth Diane Martin Littlepage, Baltimore, MD, for plaintiff.

Robert C. Morgan, Mason, Ketterman and Morgan, Baltimore, MD, and David E. Manoogian, Epstein, Becker and Green, Washington, DC, for defendants.

## MEMORANDUM

NORTHROP, Senior District Judge.

The instant action brings for resolution before this Court a petition for removal by Defendants MD–Individual Practice Associates, Inc., t/a MD–IPA and Mid Atlantic Services, Inc. (collectively "MD–IPA"), a motion to remand by Defendant Dr. Barry Roseman ("Dr. Roseman"), and a motion to remand by Plaintiff Merle Jackson ("Jackson"). MD–IPA has filed an opposition to Jackson's motion to remand. No hearing is necessary. Local Rule 105.6 (D.Md.1992, as

amended 1994). For the following reasons, MD–IPA's petition for removal shall be dismissed, and Dr. Roseman's and Jackson's motions to remand shall be granted.

## I. *Background*

In October 1994 Jackson filed a complaint of medical malpractice against Dr. Roseman and MD–IPA in the Maryland Health Claims Arbitration Office. On November 16, 1994, MD–IPA filed in this Court a petition for removal on the basis that Jackson's state claims against MD–IPA arise under and are preempted by the federal Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA").

On February 10, 1995, this Court granted a motion by Jackson to amend the complaint so as to add Defendant Dr. Sheelmohan Sachdev to his suit. At present, Jackson's amended one-count complaint generally alleges medical negligence on the part of Drs. Roseman and Sachdev and MD–IPA. MD–IPA is a health maintenance organization ("HMO") with whom Jackson's employer has contracted for the provision of employee health benefits through an employee welfare benefit plan. Drs. Roseman and Sachdev are individual providers under the plan.

Jackson's complaint specifically avers that the negligence of Drs. Roseman and Sachdev in allowing the growth and ultimate metasta-sis of a malignant cancer in his mouth caused him severe and permanent injury. With regard to MD–IPA; the gravamen of Jackson's claim is that the corporate Defendant is vicariously liable for the doctors' negligent acts.[1] Paragraph 13 of the complaint reinforces the reading that whatever negligence is attributable to MD–IPA is predicated wholly on the actions of Drs. Roseman and Sachdev. Consistent with that interpretation, MD–IPA argues throughout its removal petition and opposition memoranda that vicarious liability forms a sufficient basis for removal in this case.

## II. *The Complaint*

Jackson's complaint only asserts what are facially state common law claims. Accordingly, in order properly to address the subject-matter jurisdiction question, this Court must first apply the well-pleaded-complaint rule. The well-pleaded-complaint rule restricts the search for a basis of federal question jurisdiction to "what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendants may interpose." *Taylor v. Anderson*, 234 U.S. 74, 75–76, 34 S.Ct. 724, 724, 58 L.Ed. 1218 (1914).

---

1. Indeed, the complaint's language tends to show, with the possible exception of paragraph 4, that in those portions that make an inclusive reference to MD–IPA, Jackson's charges are principally aimed at the individual doctors and focus on their alleged misconduct:

> 1. * * * [T]he Defendants represented to the Plaintiff and the public that they possessed the degree of skill, knowledge and ability **possessed by reasonably competent medical practitioners * * *.**
> 2. * * * Defendants herein, **including duly authorized agents and/or employees of the Defendant Corporations, owed** * * * the duty to exercise the degree of care, skill, and judgment **expected of a competent medical practitioner** * * *.
>
>     \*    \*    \*    \*    \*    \*
>
> 4. * * * Defendant Corporations **through their agents, servants and employees,** owed to the Plaintiff a duty to exercise a degree of care, skill and judgment expected of a competent medical corporation acting in the same or similar circumstances * * *.

5. The Defendant Corporations **through their agents, servants and/or employees** were negligent in that they failed to employ appropriate treatment, [etc.] * * *.

    \*    \*    \*    \*    \*    \*

7. At all times referred to herein, the Defendants Sachdev and Roseman were acting on their own behalves as well as on behalf of the Defendants MD–Independent Practice Associates, Inc. t/a MD–IPA and Mid Atlantic Medical Services, Inc.

    \*    \*    \*    \*    \*    \*

13. The Plaintiff refers to the negligence of the Defendants herein as the proximate cause of all of his injuries * * *. **It is asserted that had the Defendants Sachdev and Roseman conformed with the standards of care, the entire cancer would have been removed in situ at the outset, and the Plaintiff would have avoided the growth and spread of the cancer which resulted in his disfigurement and unfavorable prognosis.**

Amended Complaint at 3–5, 9 (emphasis added).

"One corollary of the well pleaded complaint rule developed in case law, however, is that Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). The Supreme Court in *Metropolitan* held that state-common-law claims which were in the nature of ERISA civil enforcement actions governed by 29 U.S.C. § 1132(a)(1) would be treated as federal claims.[2]

Thus construing the complaint in a manner consistent with MD–IPA's principal contention that this Court possesses original subject-matter jurisdiction over the instant action due to the preemption of Jackson's state-law claim of vicarious liability, we next examine the applicable law.

### III. Preemption of State Claims

■ Congress' passage of ERISA was meant to serve as the enactment of a comprehensive statute for the regulation of, among other things, employee welfare benefit plans that, "through the purchase of insurance or otherwise," provide medical, surgical, or hospital care, or benefits in the event of sickness, accident, disability or death. 29 U.S.C. §§ 1001 *et seq.; Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 137, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990), *citing Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983). Section 514(a) of ERISA, as codified in 29 U.S.C. § 1144(a), establishes the statute's broad preemptive power over "all State laws insofar as they may now or hereafter relate to any employee benefit plan."

The parties do not dispute that the plan offered to Jackson and his colleagues is an employee benefit plan governed by ERISA. The relevant question, then, is whether Jackson's state-law claim of vicarious liability sufficiently "relates to" his employment benefit plan in a way that requires preemption.

Whether or not ERISA preempts Jackson's state claim against MD–IPA is a question whose answer depends, ultimately, on legislative intent. *Ingersoll–Rand*, 498 U.S. at 137–38, 111 S.Ct. at 482; *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 747, 105 S.Ct. 2380, 2393, 85 L.Ed.2d 728 (1985). To give proper effect to congressional intent, this Court must, in its consideration of whether a law "relates to" an employee benefit plan within the meaning of § 514(a) of ERISA, apply a broad common-sense meaning to the term. *Id.* at 747, 105 S.Ct. at 2393. *See also FMC Corp. v. Holliday*, 498 U.S. 52, 58, 111 S.Ct. 403, 407–08, 112 L.Ed.2d 356 (1990); *Shaw*, 463 U.S. at 97, 103 S.Ct. at 2900.

■ Where a state law "has a connection with or reference to" an employee benefit plan and relates to it in the "normal sense of the phrase," it will be considered preempted. *Id.* at 97, 103 S.Ct. at 2900; *Ingersoll–Rand*, 498 U.S. at 133, 111 S.Ct. at 478. Indeed, even a state law which is not specifically designed to affect a benefit plan or whose effect on it is only indirect may be found to relate to it for preemption purposes. *Id.* at 139, 111 S.Ct. at 483; *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47, 107 S.Ct. 1549, 1552–53, 95 L.Ed.2d 39 (1987). In short, a state-law claim whose governing law has no impact on an employee benefit plan but which is invoked by a beneficiary claiming relief for injuries arising out of the administration of the plan, such as the mishandling of benefit claims or other maladministrations of a plan, "relates to" such a plan. *Powell v. Chesapeake & Potomac Telephone Co. of Va.*, 780 F.2d 419, 421–22 (4th Cir. 1985), *cert. denied*, 476 U.S. 1170, 106 S.Ct. 2892, 90 L.Ed.2d 980 (1986); *Pomeroy v. Johns Hopkins Medical Services, Inc.*, 868 F.Supp. 110, 112 (D.Md.1994).

The Supreme Court has, however, recognized that the preemptive effect of ERISA will be circumscribed in those cases where a state law relates to ERISA in "too tenuous, remote or peripheral a manner to warrant a

---

2. Section 1132(a)(1)(B) provides that a civil action may be brought by a participant or beneficiary:

to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]

finding that [it] relates to the plan." *Shaw*, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21. Similarly, "lawsuits against ERISA plans for run-of-the-mill claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan," are examples of causes of actions that will not be preempted by Section 514(a). *Mackey v. Lanier Collection Agency and Serv., Inc.*, 486 U.S. 825, 833, 108 S.Ct. 2182, 2187, 100 L.Ed.2d 836 (1988).[3]

## IV. Preemption Analysis

MD–IPA broadly contends that "a medical malpractice claim against an HMO is really nothing more than a complaint about the administration of claims under the welfare benefit plan." Petition for Removal at 3. The crux of the Defendant's position, however, is that because Jackson has sued under a theory of vicarious liability,[4] his claim sufficiently "relates to" the employee welfare benefit plan and therefore implicates ERISA and this Court's subject-matter jurisdiction.[5]

In support of this argument, the Defendant corporations rely primarily on *Pomeroy, supra*, which concerned, as stated by the *Pomeroy* Court, allegations that "essentially" related to the administration of the plaintiffs' claims under the benefit plan. 868 F.Supp. at 113. Indeed, this Court concurs with MD–IPA's view that the principal facts and charges in *Pomeroy* involved the HMO's own refusal to pay for treatment and its negligent selection of health care providers. *Id.* at 113–14. There is no doubt that the gravamen of the plaintiffs' claim there was directed at the HMO defendant's failure properly to administer the beneficiary's benefits and asserted the HMO's negligence as the primary cause of injury. No such claim is present in the instant complaint.

However, the Court in *Pomeroy* also held that the plaintiffs' claim of vicarious liability was related to a duty that was created and imposed by the benefit plan and, as such, was subject to scrutiny under ERISA.[6] Relying

---

**3.** Some courts have further refined what a run-of-the-mill claim is by distinguishing these examples cited by the Supreme Court as ones where the plaintiff was a third party suing an ERISA plan, not a plan participant suing the plan provider. *Pomeroy*, 868 F.Supp. at 112.

**4.** The Court notes, although MD–IPA does not, that Jackson's complaint possibly may be read also as stating a claim against MD–IPA for negligent conduct outside of that alleged of Drs. Sachdev and Roseman. Paragraph 4 of the complaint does not offer specific and detailed factual allegations in this regard, but to the extent that it generally asserts a breach of duty of care on the part of MD–IPA, it is not unreasonable to read it as a claim asserting the HMO's negligence in selecting, employing, contracting with, and retaining doctors who were not qualified to provide competent health care, or, also, one relating to its failure to formulate, adopt, and enforce rules and policies to ensure quality care for its members. *But see* discussion *infra* note 6.

**5.** Throughout its removal petition and opposition memoranda, MD–IPA asserts also that Jackson, by virtue of his suit for damages, is "seeking a determination of benefits, ·*i.e.*, the payment of past, present and future medical expenses." *See, e.g.*, Petition for Removal at 4–5; Opposition to Plaintiff's Motion to Remand at 1. To the extent that advancement of this theory is tantamount to the generalized assertion that a request for compensatory and punitive damages in a medical malpractice claim is really nothing more than a complaint about the administration of claims under the employee welfare benefit plan, this Court

is not persuaded by such bootstrapping logic. Insofar as it basically reiterates the vicarious liability claim, it is redundant.

**6.** The Court characterized another claim in *Pomeroy* as one that involved questions of interpretation of the employee benefit plan. The plaintiffs' charge of direct negligence on the part of the HMO, specifically that it " 'owed a duty * * * to either provide or ensure that [the] Plaintiffs * * * received the proper medical care,' " was described as being predicated on a duty "created and defined by the relationship established between [the HMO] and the Plaintiffs through the Plan." *Pomeroy*, 868 F.Supp. at 113 n. 4. The subject claim is, arguably, very similar to the one Jackson brings in his amended complaint at paragraph 4, as it also could be said to assert a claim of direct negligence on the part of the HMO, be it for negligent hiring and supervision, *see supra* note 4, or for breach of fiduciary duty: " * * * Defendant Corporations through their agents, servants and employees, owed to the Plaintiff a duty to exercise a degree of care, skill and judgment expected of a competent medical corporation acting in the same or similar circumstances * * *." Amended Complaint at ¶ 4.

Because MD–IPA does not offer the allegation above as a basis for preemption under ERISA, the Court need not address the merits of the argument that a negligent hiring and/or supervision claim such as this one goes to the heart of the benefit plan's administration. In cases of medical malpractice such as this one, however, whether or not non-negligent medical service

on *Dukes v. U.S. Health Care Systems of Pennsylvania,* 848 F.Supp. 39 (E.D.Pa.1994), the Court concluded that even under a theory of vicarious responsibility the benefit plan would have to be examined to determine what representations were made to the plaintiffs with regard to whether the HMO "held out" the doctors as its employees. *Pomeroy,* 868 F.Supp. at 113. Indeed, the relevant language of *Dukes* states emphatically:

> [A] medical malpractice claim against an HMO, whether couched in direct or vicarious liability terms, relates to the benefit plan. One who enrolls in an HMO is assured of medical services of a given extent and quality. A malpractice claim asserts the services provided did not measure up to the benefit plan's promised quality. The question is one of relating plan-performance to plan-promise, and is therefore preempted by ERISA.

848 F.Supp. at 42. This Court concludes that the scope of *Dukes'* analysis of and conclusions about the preemptive effect of ERISA on state claims of vicarious liability are far too broad, and are contradicted by a substantial body of law.[7]

■ It is undisputed that ERISA preempts claims which arise from the manner in which an HMO administered plan benefits or which derive from the type or extent of benefits the defendant HMO promised or provided. *See Kuhl v. Lincoln Nat. Health Plan,* 999 F.2d 298, 303 (8th Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 694, 126 L.Ed.2d 661 (1994); *Harms v. Cavenham Forest Industries, Inc.,* 984 F.2d 686, 694 (5th Cir.1993); *Corcoran v. United Healthcare, Inc.,* 965 F.2d 1321, 1332 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 812, 121 L.Ed.2d 684 (1992); *Berger v. Edge-*

*water Steel Co.,* 911 F.2d 911 (3d Cir.), *cert. denied,* 499 U.S. 920, 111 S.Ct. 1310, 113 L.Ed.2d 244 (1990); *Elsesser v. Hospital of Philadelphia College,* 802 F.Supp. 1286, 1291–92 (E.D.Pa.1992).

Courts are in disagreement, however, over whether ERISA preempts a beneficiary's medical malpractice claim against an HMO under an ostensible agency theory. Some courts reason that an action based on a theory of vicarious liability or ostensible agency "would require [a plaintiff] to show that [he] looked to the HMO for medical care and that the HMO held out the supposedly negligent doctor or facility as its employee," thereby necessitating an examination of the benefits plan and, consequently, triggering ERISA preemption. *Pomeroy,* 868 F.Supp. at 113. *See also Visconti v. U.S. Health Care,* 857 F.Supp. 1097 (E.D.Pa.1994); *Dukes, supra; Butler v. Wu,* 853 F.Supp. 125 (D.N.J.1994); *Ricci v. Gooberman,* 840 F.Supp. 316, 317–18 (D.N.J.1993); *Altieri v. Cigna Dental Health, Inc.,* 753 F.Supp. 61 (D.Conn.1990).

■ Other courts take the opposite view. These courts begin with the principle that the term "related to" should be applied in a manner that is consistent with the policies of ERISA. *Pohl v. National Benefits Consultants, Inc.,* 956 F.2d 126, 128 (7th Cir.1992). This Court agrees with the Third Circuit Court of Appeals' opinion that a law relates to an ERISA plan if it is designed to affect such plans, singles them out for special treatment or predicates rights or obligations on the existence of such plans, impairs their ability to function simultaneously in different states, or effectively restricts such plans with regard to their structure, administration, reporting requirements, or choice of benefits. *United Wire v. Morristown Mem. Hosp.,* 995

---

was promised in a plan does not, and cannot, bear any relation to the provisions in 29 U.S.C. 1132(a). Further, to the extent that the claim might be read as one of negligent hiring and/or supervision, the Court recognizes the reasoning in *Lupo v. Human Affairs Intern., Inc.,* 28 F.3d 269, 272 (2d Cir.1994), which noted that none of the plaintiff's negligence claims against the HMO bore any resemblance to those covered in § 1132(a).

7. MD–IPA and those courts that follow *Dukes'* lead cite *Nealy v. U.S. Healthcare HMO,* 844 F.Supp. 966, 972 (S.D.N.Y.1994), as supporting

authority. *Nealy,* however, is inapposite since, despite its holding that state-law medical malpractice claims against plan administrators are preempted, the plaintiff in that case did not bring a claim of vicarious liability. "The essence of the malpractice claim in *Nealy* was a negligent failure to timely facilitate or authorize certain services, properly characterized by the court as a preempted claim for wrongful administration by defendant of the benefit plan." *Kearney v. U.S. Healthcare, Inc.,* 859 F.Supp. 182, 185 n. 4 (E.D.Pa.1994).

F.2d 1179, 1192–93 (3d Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 382, 126 L.Ed.2d 332 *reh'g denied*, —— U.S. ——, 114 S.Ct. 651, 126 L.Ed.2d 608 (1993). This view is not inconsistent with holdings by the Fourth Circuit Court of Appeals which MD–IPA itself cites. *See Tri–State Mach., Inc. v. Nationwide Life Ins. Co.*, 33 F.3d 309, 314 (4th Cir.1994) (suit brought by employer); *Makar v. Health Care Corp. of Mid–Atlantic*, 872 F.2d 80, 82 (4th Cir.1989). Indeed, absent such a literal reading of ERISA's preemption provision,[8] most, if not all, medical malpractice state claims brought by employees against plan providers would, on their face or by third party practice, be removable to federal court. This anomalous result would create an "unwise federalization of an entire class of state tort claims which, absent diversity, would be decided in state court." *Page v. Heeman*, No. 93–372 at 2 (D.Md.1993).

Mindful of that principle, the court in *Kearney v. U.S. Healthcare, Inc., supra,* 859 F.Supp. at 186–87, properly reasoned that the question of a doctor's negligence does not necessitate reference to benefit plans to determine whether the service provided was that which was promised. The court concluded:

> What is required is evidence of what transpired between the patient and physician and an assessment of whether in providing admittedly covered treatment or giving professional advice the physician possessed and utilized the knowledge, skill, and care usually had and exercised by physicians in his community or medical specialty. As noted, a claim that one was denied a promised benefit is preempted. A claim that one received promised service from a provider who performed that service negligently is another matter.

*Id.* As for a determination of an HMO's vicarious liability, the court correctly opined that reference to the plan, if any, will be necessary only for proving matters of agency, not of wrongful plan administration or of the withholding of promised benefits. *Id.*

Rejecting an overbroad application of preemption principles the court concluded:

> * * * That one may refer to the contents of a plan to adduce evidence that it held out a particular person as its employee or agent to help sustain a cause of action does not implicate the concerns underlying the ERISA preemption provision.

*Id.* at 186.

■ This Court agrees with the view that a medical malpractice suit, such as that at issue in *Kearney* and in the instant case, does not involve a direct claim to recover benefits, enforce rights under the plan, or clarify future benefits, as contemplated under 29 U.S.C. § 1132(a). Rather than focusing on the contents of a plan, and the rights provided therein, Jackson, like the plaintiff in *Kearney,* simply argues that the negligent care of individual providers caused him injury. Issues of agency, if any, relevant to the question of vicarious liability do not, without more, sufficiently implicate the policy concerns of ERISA to justify removal. *See also Smith v. HMO Great Lakes*, 852 F.Supp. 669, 671–72 (N.D.Ill.1994); *Elsesser v. Hospital of Philadelphia College, supra,* 802 F.Supp. at 1291–92; *Independence HMO v. Smith*, 733 F.Supp. 983 (E.D.Pa.1990).

For the foregoing reasons, MD–IPA's petition for removal shall be dismissed and the motions to remand by Jackson and Dr. Roseman shall be granted.

## V. *Joinder*

■ Jackson's and Dr. Roseman's motions to remand also shall be granted due to the procedural defects in MD–IPA's petition for removal under 28 U.S.C. § 1446. All defendants must consent to a removal. *See Chicago, R.I. & P. Ry. Co. v. Martin*, 178 U.S. 245, 248, 20 S.Ct. 854, 855, 44 L.Ed. 1055 (1900) (receivers were required to obtain the consent of all defendants, including those without the right to remove the case), *cited in Davenport v. Southern Ry. Co.*, 135 F. 960 (4th Cir.1905), *and Brantley v. Vaughan*, 835 F.Supp. 258 (D.S.C.1993); *Whitcomb v. Potomac Physicians, P.A.*, 832

---

**8.** A literal reading of the provision does not come at the expense of the broad meaning assigned to it by the Supreme Court; rather, it merely aligns the preemption language with the "common sense" and "normal sense" which the Court, and Congress, intended it to have.

F.Supp. 1011, 1013 (D.Md.1993); *Martin Oil v. Philadelphia Life Ins.*, 827 F.Supp. 1236, 1237 (N.D.W.Va.1993) (and cases cited therein); *Adams v. Aero Serv. Int'l, Inc.*, 657 F.Supp. 519, 521 (E.D.Va.1987). Not only is unanimity for the removal lacking here, but, contrary to MD–IPA's assertions, *see* Opposition to Motion to Remand at 3, one of the defendants has affirmatively opposed it. *See* Dr. Roseman's Motion to Remand.

Accordingly, Jackson's and Dr. Roseman's motions to remand shall be granted.

A separate Order remanding this action to the Maryland Health Claims Arbitration Office shall enter.